1  Edward J. Wynne (SBN 165819)
   ewynne@wynnelawfirm.com
2  George R. Nemiroff (SBN 262058)
   gnemiroff@wynnelawfirm.com
3  WYNNE LAW FIRM
   80 E Sir Francis Drake Blvd, Suite 3G
4  Larkspur CA 94939
   Phone: 415-461-6400
5
6  Ray E. Gallo (SBN 158903)
   rgallo@gallo.law
7  GALLO LLP
   100 Pine St., Suite 1250
8  San Francisco, CA 94111
   Phone: 415.257.8800
9
10 Attorneys for Objector
   Barbarito Ruan Vasquez
11

12              UNITED STATES DISTRICT COURT

13             EASTERN DISTRICT OF CALIFORNIA

14                  SACRAMENTO DIVISION

15 GLORIA CAVES and TAMIM KABIR,      Case No. 2:18-cv-02910-MCE-DB
   on behalf of themselves and all others
16 similarly situated,                Hon. Morrison C. England, Jr.

17                Plaintiffs,          **CLASS MEMBER BARBARITO RUAN
                                       VASQUEZ'S OBJECTION TO PROPOSED**
18            v.                       **CLASS ACTION SETTLEMENT**

19 WALGREEN CO.,

20                                     Final Approving Hearing
                Defendant.
21                                     Date: February 11, 2021
22                                     Time: 2:00 p.m.
23                                     Courtroom: 7, 14th Floor

24

25

26

27

28

                              1

# TABLE OF CONTENTS

1.    Summary of Objections ................................................................................................ 5

2.    Facts ........................................................................................................................... 7

    A.    The Merits of the Caves Class Members' Claims............................................ 7
    B.    Class Members' Individual Damages ............................................................. 7

3.    Procedural History ................................................................................................... 8

    A.    The Caves Action ............................................................................................ 8
    B.    The Morales Action......................................................................................... 9
    C.    The Aguilar Action ......................................................................................... 10
    D.    The Caves Settlement...................................................................................... 10

4.    Detailed Objections and Argument ......................................................................... 11

    A.    The proponents of the Settlement have not met their burden to show the Settlement
    represents an appropriate discount from the full value of the claims ........................ 12

        (1)    Applicable law requires the proponents of the Settlement to demonstrate that it
        represents a reasonable discount from the potential recovery ................................... 12

        (2)    Class Counsel has failed to provide any evidence concerning the full value of the
        claims they propose to compromise........................................................................ 14

        (3)    Class Counsel also has provided no meaningful assessment of the risks of proceeding
        and probabilities of prevailing .............................................................................. 14

    B.    Class Counsel has failed to establish a sufficient basis for the Court to certify the class for
    settlement purposes ............................................................................................... 15

    C.    The Settlement fails to differentiate between class members who are entitled to Labor
    Code 203 Penalties and those who are not, with no reasonable justification for failing to do so
    16

    D.    The Settlement is Too Low .................................................................................. 16

    E.    The Settlement releases claims from more workweeks than class members are being paid
    for   17

    F.    The Settlement seeks to release a claim that was not litigated ........................................... 17

    G.    The Caves parties' Memorandum of Understanding was not presented to the court ........ 18

    H.    The Settlement makes opting out unreasonably difficult.................................................... 18

    I.    The Settlement seeks to expand the statute of limitations beyond the statute covered by
    Caves, further evidence that the Settlement is the product of a reverse auction....................... 19

    J.    The Settlement does not pay uncashed checks to class members, and the designated cy pre
    recipient is a pet charity of Walgreens with no connection to the claims or the class—further
    evidence of the reverse auction nature of the Settlement........................................................... 19

    K.    The Settlement provides favorable tax treatment for Walgreens at Class Members'
    expense—further evidence of the reverse auction nature of the Settlement............................. 20

    L.    This is a collusive, reverse auction settlement that requires close scrutiny and should not
    be approved ...................................................................................................................... 21

**OBJECTION TO PROPOSED SETTLEMENT**

(1)    Reverse auctions harm class members ........................................................ 21

(2)    The Settlement is the result of a reverse auction and should be disapproved ............ 22

5.    **Conclusion** ......................................................................................................... **24**

**OBJECTION TO PROPOSED SETTLEMENT**

# TABLE OF AUTHORITIES

## Cases

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) ............................................................ 15
*Berry v. Boca*, 2005 WL 1030248 (C.D. Cal. May 2, 2005) ......................................................... 16
*Blair v. Equifax Check Servs., Inc.*, 181 F.3d 832 (7th Cir. 1999) ............................................. 22
*Boyd v. Avanquest N. Am. Inc*,
    No. 12-cv-4391-WHO, 2015 WL 4396137 (N.D. Cal. July 17, 2015) .................................... 21
*Cal. Union Ins. Co. v. Trinity River Land Co.*, 163 Cal. Rptr. 802 (Cal. Ct. App. 1980) ............ 23
*Conti v. Loreal USA S/D, Inc.*,
    No. 119CV00769LJOSKO, 2020 WL 416403 (E.D. Cal. Jan. 27, 2020) ............................... 13
*Cotter v. Lyft, Inc.*, 176 F.Supp.3d 930 (N.D. Cal. 2016) ........................................................... 12
*Cotter v. Lyft, Inc.*, 193 F.Supp.3d 1030 (N.D. Cal. 2016) ......................................................... 12
*Cullan and Cullan LLC v. M-Qube, Inc.*, 2014 WL 347034 (D. Neb. January 30, 2014) ............ 22
*Dalchau v. Fastaff, LLC*,
    No. 17-cv-01584-WHO, 2018 WL1709925 (N.D. Cal. Apr. 9, 2018) ..................................... 23
*Doninger v. Pac. N.W. Bell, Inc.*, 546 F.2d 1304 (9th Cir. 1977) ................................................ 16
*Eddings v. DS Servs. Of Am., Inc.*,
    NO. 15-CV-02576-VC, 2016 WL 3390477 (N.D. Cal. May 20, 2016) ................................... 12
*Gale v. Winco Foods*, No. C 09-05381 CRB, 2011 WL 3794887 (N.D. Cal. Aug. 26, 2011) ...... 15
*General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147 (1982) ................................................... 16
*Haralson v. U.S. Aviation Servs. Corp.*, 383 F.Supp.3d 959 (N.D. Cal. 2019) ............................ 13
*Manuel v. Convergys Corp.*, 430 F.3d 1132 (11th Cir. 2005) .................................................... 23
*Molski v. Gleich*, 318 F.3d 937 (9th Cir. 2003) .......................................................................... 15
*Murray v. Scelzi Enterprises, Inc.*,
    No. 118CV01492LJOSKO, 2019 WL 6045146 (E.D. Cal. Nov. 15, 2019) ............................ 17
*Naschin v. AOL, LLC*, 663 F.3d 1034 (9th Cir. 2011) ................................................................. 20
*Plant Insulation Co. v. Fibreboard Corp.*, 274 Cal. Rptr. 147 (Cal. Ct. App. 1990) ................... 23
*Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277 (7th Cir. 2002) ............................................... 22
*Roes 1-2 v. SFBSC Mgmt, LLC*, 944 F.3d 1035 (9th Cir. 2019) ................................................. 11
*State of Cal. v. eBay, Inc.*,
    No. 12-cv-5874-EJD, 2014 WL 4273888, (N.D. Cal. Aug. 29, 2014) .................................. 21
*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) .................................................................... 15
*Weigele v. FedEx Group Package Sys., Inc.*, 267 F.R.D. 614 (S.D. Cal. 2010) .......................... 15
*Whiteway v. Fedex Kinkos Office & Print. Servs. Inc.*,
    No. C05-2320 SBA, 2009 WL 952749 (N.D. Cal. Oct. 2, 2009) ........................................... 15

## Statutes

8 C.C.R. § 11070 ........................................................................................................................ 11
Calif. Bus. & Prof. Code § 17200 ............................................................................................... 11
Calif. Bus. & Prof. Code § 17208 ............................................................................................... 20
Calif. Code Civ. Proc., § 384 ...................................................................................................... 21
Fed. R. Civ. P. Rule 23(e) ............................................................................................... 12, 17, 19
Labor Code § 201 ....................................................................................................................... 11
Labor Code § 202 ....................................................................................................................... 11
Labor Code § 203 ....................................................................................................................... 11
Labor Code § 226 ....................................................................................................................... 11
Labor Code § 510 ....................................................................................................................... 10

## Other Authorities

4 William B. Rubenstein, Newberg on Class Actions § 13:57 (5th ed. 2018) ............................. 23
Jonathan R. Macey & Geoffrey P. Miller, Judicial Review of Class Action Settlements, 1 J. Legal
    Analysis (2009) ................................................................................................................... 24
Standards and Guidelines for Litigating and Settling Consumer Class Actions, 299 F.R.D. 160
    (3d ed. 2014) ....................................................................................................................... 23

**OBJECTION TO PROPOSED SETTLEMENT**

Class Member Barbarito Ruan Vasquez ("Objector"), by and through his undersigned attorneys, hereby objects to the proposed settlement of this action on behalf of the entire class of Walgreens store managers, as defined by the Court's August 13, 2020 Order. (Dkt. 47, ¶ 3.) Mr. Vasquez has not objected to a proposed class action settlement in the last five years.

Mr. Vasquez is represented by Edward J. Wynne and Ray E. Gallo ("Objector's Counsel"), well-reputed California class action lawyers who usually represent Plaintiffs and rarely represent objectors. Over the past two years, they have been retained by more than 140 *Caves* class members, most of whose claims are pending in *Aguilar v. Walgreen Co.*, N.D. Cal. Case No. 3:20-cv-00124-MMC, to prosecute on an individual basis the same claims Caves proposes to settle here, and have been litigating those claims in *Aguilar* and an earlier filed class action since before *Caves* was filed. Based on the information obtained from those clients, and from Walgreens in Aguilar, Objector's Counsel unavoidably has concluded the proposed settlement ("Settlement") should not be approved, as approval would to do a grave injustice and disservice to the fair value of the claims of most class members. Mr. Vasquez will appear at the February 11, 2021 fairness hearing through counsel.

## 1. Summary of Objections

The proposed settlement ("Settlement") is not fair, it is not adequate, and it is not reasonable. It is not supported by any substantive evidence or legal analysis, and certainly none sufficient to support final approval. It suffers from these and all of the following defects:

1) Class counsel has failed to proffer evidence sufficient to evaluate the reasonableness of the Settlement, or support any grant of final approval of it. Nothing in the record indicates whether the class can be certified or not, the likelihood of prevailing on the merits, or the potential value of the claims if Plaintiffs prevail.

2) The Settlement represents a 97% discount from the potential recovery, as reflected by the "conservative" assumptions that Walgreens presented to the United States District Court for the Northern District of California when removing the *Aguilar* action to that Court, *and as confirmed by Objector's counsel's own investigation* in the prosecution

<div align="center">5</div>

**OBJECTION TO PROPOSED SETTLEMENT**

of *Aguilar*.

3)  Class Counsel has failed to show that class certification is appropriate.

4)  The Settlement releases claims that class members are not being paid for—the Class Period includes more weeks (305.7) than were used in calculating the class members' individual payouts from the Settlement (a maximum of 288).

5)  The Settlement releases overtime claims that were not alleged in the original complaint, and which there is no evidence that Class Counsel has reasonably litigated, investigated, or valued (no facts regarding their quantum appears in the record).

6)  The Settlement fails to differentiate between class members who are entitled to Labor Code 203 Penalties and those who are not, with no reasonable justification for failing to do so.

7)  The Settlement makes opting out unreasonably difficult by providing only one way to do it — by mail — without any justification for eliminating readily available and reasonable alternatives (online and email opt-out processes are common and easy, email and online options take less time, trouble, and expense for class members than mail and even cost less for the administrator to manage than processing paper mail).

8)  The Settlement was not entered into in an arm's length transaction, as indicated by the available indicia, per applicable law.

9)  The Settlement MOU has not been presented to the Court, as required by law.

10) The Settlement expands the class period beyond the period covered by *Caves*.

11) The Settlement provides favorable tax treatment for Defendant.

12) The Settlement does not pay uncashed checks to class members.

13) The Cy Pres recipient is inappropriate, bearing no relationship to the case other than being Walgreens' general counsel's pet charity.

14) The Settlement is the product of a reverse auction.

**OBJECTION TO PROPOSED SETTLEMENT**

For these reasons, and as further discussed below, the Court should deny final approval.

## 2.    Facts

Objector can, and when necessary and appropriate will, prove as follows.

### A.    The Merits of the Caves Class Members' Claims.

At all but the largest Walgreens stores, the store managers have a few management duties but mostly do the same work as those they supervise—stocking shelves, filling prescriptions, cashiering, and other hourly tasks. Walgreens simply does not provide staff hours sufficient to perform all this work. Only by doing this themselves could managers meet the production goals Walgreens establishes. California law requires that all such employees be paid hourly. Because the *Caves* class members were not, Walgreens owes them overtime, compensation for missed meal and rest breaks, penalties, interest, and attorneys' fees.

### B.    Class Members' Individual Damages

Extrapolating from Walgreens' own calculations of the potential value of the original 38 *Aguilar* plaintiffs to all 919 class members in *Caves*, the class members' claims are valued as follows:

| Claims | *Aguilar* Plaintiffs (39) claims as calculated by Walgreens[1] | Extrapolated Classwide Exposure (919) |
|---|---|---|
| Overtime Wages | $2,162,877 | $50,966,255 |
| Meal Period Premiums | $1,441,918 | $33,977,503 |
| Rest Period Premiums | $1,441,918 | $33,907.503 |
| Wage Statement Penalties | $36,300 | $846,069 |
| Waiting Time Penalties | $148,703 | $3,504,052 |
| Attorney's Fees | $1,170,000 | 27,570,000 |
| Interest on Unpaid Wages and Break Premiums | $1,911,905 | $45,052,325 |
| **TOTAL** | **$8,313,621** | **$197,876,707** |
| Average Liability Per Class Member Per Workweek | $1,110.83 | $1,110.83 |

Note that Walgreens' calculations did not include Interest, and omitted waiting time penalties for 2 members (Kuhn, Lau).

**OBJECTION TO PROPOSED SETTLEMENT**

More detailed information from 79 *Caves* class members who are represented by Objector's counsel (all those from whom we had such detailed information as of drafting), and an analysis that accounts for the average number of work weeks, shows Walgreens' assumptions were indeed conservative. The true value of the class members' claims is significantly greater:

- Store Managers have an average yearly salary of $79,000, equivalent to an **hourly wage of $38**.

- Store Managers on average work more than 50 hours per week, or at least **10 hours of overtime each week**, which must be compensated at 1.5 times the hourly rate (or more)—*i.e.*, at least **15 hours of regular pay**.

- Store Managers on average report **missing lawful, uninterrupted, 10-minute rest breaks on 4 days each week**. For each such day, a Store Manager is entitled to a premium payment of one-hour's pay at his hourly pay rate.

- Store Managers report **working an average of 3.6 days per week without taking a single uninterrupted, lawful, 30-minute meal break**, nevermind the two that are required for shifts of 10 hours or more. A Store Manager is entitled to a premium payment of one-hour's pay at his hourly rate for each such day.

- Store Managers worked an **average of 240 workweeks** in the class period.

At $38 per hour, the average Store Manager is owed $858.80 per workweek, or approximately 32 times the $27 *Caves* class members would get from the Settlement, if it is approved. Multiplied by the average number of work weeks—240—, the total is not the proposed $6 million (less than $4.5 million after fees and costs) but $204,200 **before** interest or penalties (for failure to provide accurate wage statements and failure to timely pay wages due upon termination), all of which would significantly increase the recovery. **And** it does not include attorneys' fees.

## 3. Procedural History

### A. The Caves Action

**OBJECTION TO PROPOSED SETTLEMENT**

On November 2, 2018, Gloria Caves and Tamim Kabir (the "*Caves* Plaintiffs") filed their complaint in United States District Court for the Eastern District of California. (the "*Caves* action") The *Caves* action alleged eight causes of action for 1) failure to provide meal periods and pay premiums; 2) failure to provide rest periods and pay premiums; 3) failure to pay all wages (i.e., premiums) when due; 4) inaccurate itemized wage statements (i.e., that do not reflect the premiums); 5) waiting time penalties (i.e., for unpaid premiums); 6) breach of contract (i.e. breach for failing to pay premiums); 7) breach of the implied covenant of good faith and fair dealing (i.e., breach for failing to pay premiums); and 8) violation of the UCL (i.e., seeking equitable relief for unpaid premiums). (Decl. of Gallo, ¶ 3.) Significantly, the *Caves* action did not allege a claim for unpaid overtime compensation. (*Id.*)

B.    **The Morales Action**

On October 16, 2018, 17 days <u>before</u> *Caves* was filed, Plaintiff Alfred Morales already had filed a complaint in San Francisco Superior Court asserting the same wage and hour claims as *Caves* (Case No. CGC-18-570597 ( "*Morales*")). (Decl. of Gallo, ¶ 7.) *Morales* additionally included a claim for unpaid overtime pursuant to Labor Code § 510 that *Caves* negligently omitted, and which constituted most of the value of the claims held by the putative *Morales* and *Caves* classes.

On January 7, 2019, Defendant[1] removed the *Morales* action from San Francisco Superior Court to the United States District Court for the Northern District of California. (*Morales*, Dkt. 1.) On January 22, 2019, Plaintiff filed a Motion to Remand. (*Morales*, Dkt. 15.) Nearly three months later, on April 15, 2019, the Northern District granted Plaintiff's motion and remanded the *Morales* action back to San Francisco Superior Court. (*Morales*, Dkt. 25.) Upon being remanded to San Francisco Superior Court, on May 2, 2019, Defendant filed a Motion to Stay Proceedings in favor of this action, leaving the work to this Court. On May 29, 2019, the San Francisco Superior Court granted Defendant's Motion to Stay. *Morales* remains stayed pending class certification in *Caves*.

---

[1] Defendant has retained the same counsel for the *Morales*, *Caves* and *Aguilar* actions.

**OBJECTION TO PROPOSED SETTLEMENT**

C.    **The Aguilar Action**

On December 4, 2019, Raquel Aguilar and 38 other current and former Walgreens store managers (the original 38 *Aguilar* Plaintiffs) filed a mass action in Marin County Superior Court against Defendant Walgreen Co. alleging causes of action for 1) violations of Labor Code § 510 for failure to pay overtime 2) violations of Labor Code § 226 and  8 C.C.R. § 11070 for failure to provide meal periods; 3) violations of Labor Code § 226.7 and 8 C.C.R. § 11070 for failure to provide rest breaks; 4) violations of Labor Code § 226 for inaccurate wage statements; and 5) violations of Labor Code §§ 201, 202 and 203 for waiting time penalties; and 6) violations of Calif. Bus. & Prof. Code § 17200, *et seq.* for failure to pay overtime compensation and failure to provide meal periods and rest breaks (the "*Aguilar* action"). (Decl. of Gallo, ¶ 4.)

The *Aguilar* action now includes about 142 individual Plaintiffs, all current and former California Store Managers during the Caves class period. (Decl. of Gallo, ¶ 5.)

On January 6, 2020, Walgreens removed *Aguilar* to the Northern District based on diversity jurisdiction. (*Aguilar v. Walgreen Co*., N.D. Cal. Case No. 3:20-cv-00124-MMC, Dkt. 1.) In its Notice of Removal, to meet the amount-in-controversy requirement, Defendant made the "conservative assumption" (Walgreens' words) that the *Aguilar* Plaintiffs each worked one (1) hour of overtime every workday during the four-year statutory period. (*Aguilar,* Dkt. 1, ¶¶ 23-24.) Walgreens also assumed that since the *Aguilar* Plaintiffs had put meal and rest periods at issue there was one violation for both each day worked in the statutory period. (*Id*. at ¶¶ 25-29.) Using these "conservative assumptions," Defendant calculated the amount in controversy for all but one of the then-named plaintiffs, with a low of $99,442.63 to a high of $223,326.07, and the average amount in controversy per plaintiff being $167,930.90. The resulting aggregate amount-in-controversy for just these original 38 *Aguilar* Plaintiffs, as calculated by Walgreens, was $6,381,375.58. (Decl. of Gallo, ¶ 2.)

D.    **The Caves Settlement**

On June 22, 2020, the *Caves* Plaintiffs filed their Motion for Preliminary Approval outlining the terms of this proposed settlement. (Dkt. 32.) Under the terms of the Settlement, a

**OBJECTION TO PROPOSED SETTLEMENT**

fund of $6,000,000 would be created and be paid out to "over 900 class members." (*Id.*, Mot., at p. 6.) The actual number of class members is 919, according to Walgreens' counsel. (Gallo Decl. ¶ 6 and Exh. 5.) The *Caves* Plaintiffs' preliminary approval papers provided no other information to evaluate the reasonableness of the settlement, except that fees of $1.5 million would be sought and that they expect class members to receive an average of $4,700. (*Id.*, Mot. p. 16-17.) On July 7, 2020, 51 of the *Aguilar* Plaintiffs objected to the *Caves* Motion for Preliminary Approval. (Dkt. 34.) On August 13, 2020, this Court issued its Order Preliminary Approving Settlement Agreement and striking the objections as premature. (Dkt. 44.)

## 4.    Detailed Objections and Argument

Federal Rule of Civil Procedure Rule 23(e)(2) provides that "[i]f the proposal would bind class members, the court may approve only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided to the class is adequate, taking into account
>> (i)    the costs, risks, and delay of trial and appeal
>> (ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of distributing relief to the class, including the method of processing class-member claims;
>> (iii)   the terms of any proposed award of attorney's fees, including time of payments;
>> (iv)   any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other."

"The procedural burden is more strict when a settlement is negotiated absent class certification," and a "district court abuses its discretion if it fails to apply an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e)." *Roes 1-2 v. SFBSC Mgmt, LLC*, 944 F.3d 1035, 1043 (9th Cir. 2019).

In *SFBSC Mgmt*, the Ninth Circuit recognized that Rule 23(e) provides a set of factors for courts to use when assessing proposed settlements, but emphasized that "[w]here, however, the parties negotiate a settlement before the class has been certified, settlement approval requires a higher standard of fairness and a more probing inquiry than may normally be required under Rule

**OBJECTION TO PROPOSED SETTLEMENT**

23(e)." *Roes 1-2*, 944 F.3d at 1048 (internal quotation marks and citation omitted).

A.    **The proponents of the Settlement have not met their burden to show the Settlement represents an appropriate discount from the full value of the claims**

(1)    *Applicable law requires the proponents of the Settlement to demonstrate that it represents a reasonable discount from the potential recovery*

The proponents of a class action settlement must provide enough information for the district court to carefully evaluate the strengths of the claims, the risks of fully litigating them, and the value of the relief of each class member could receive at the end of that full litigation. *Hunt v. VEP Healthcare, Inc.*, No. 16-CV-04790-VC, 2017 WL 3608297, at *1 (N.D. Cal. Aug. 22, 2017) (citing *Cotter v. Lyft, Inc.*, 193 F.Supp.3d 1030, 1037 (N.D. Cal. 2016).) "In determining whether the proposed settlement within the range of reasonableness *perhaps the most important factor to consider is 'plaintiffs' expected recovery balanced against the value of the settlement offer.*'" *Cotter v. Lyft, Inc.*, 176 F.Supp.3d 930, 935 (N.D. Cal. 2016) (emphasis added). "Determining whether the settlement falls within the range of reasonableness also requires evaluating the relative strengths and weaknesses of the plaintiffs' case; it may be reasonable to settle a weak claim for relatively little, while it is not reasonable to settle a strong claim for the same amount." *Id*. Here, *Caves* counsel has provided the Court and the class with no information regarding the potential recovery nor the likelihood of recovering it. Neither the Court nor the class, on the current record, can determine whether the proposed settlement is reasonable.

District courts in this Circuit have routinely denied preliminary approval in wage and hour class actions where counsel failed to provide enough information to determine whether it is reasonable in light of the value of the claims and the likelihood of prevailing on them.

In *Cotter v. Lyft, Inc.*, 176 F.Supp.3d 930, 931-932, the district court denied preliminary approval of a $12.25 million wage and hour class action settlement when the Court found that plaintiff's own damage analysis supported the defendant's maximum exposure for just the reimbursement claim to be $126 million. *Id*. at 940.

In *Eddings v. DS Servs. Of Am., Inc.*, NO. 15-CV-02576-VC, 2016 WL 3390477, at *1 (N.D. Cal. May 20, 2016), the district court denied preliminary approval because plaintiffs' counsel's "bare assertion" that the settlement fund represented "approximately 75% to 90% of the

12

total unpaid overtime owed to class members and over 50% of the total unpaid overtime and meal and rest period premium pay" was not enough. The district court stated plaintiffs "must show their work by explaining the relative value of the claims in significant detail." *Id*.

Similarly, in *Haralson v. U.S. Aviation Servs. Corp.*, 383 F.Supp.3d 959 (N.D. Cal. 2019) the district court denied preliminary approval of a wage and hour settlement citing plaintiffs "provided no information about the maximum amount that the putative class members could have recovered if they ultimately prevailed on the merits of their claims" and *"any fraction has a denominator, and without knowing what [that was] the Court [could not] balance plaintiffs' expected recovery against the proposed settlement recovery." Id*. at 969-970 (emphasis added.)

Most recently, in *Conti v. Loreal USA S/D, Inc.*, No. 119CV00769LJOSKO, 2020 WL 416403, at *10-12 (E.D. Cal. Jan. 27, 2020), *report and recommendation adopted*, No. 119CV00769NONESKO, 2020 WL 820155 (E.D. Cal. Feb. 19, 2020), the court denied the plaintiff's motion for preliminary approval where the court was provided with incomplete information regarding the class's potential recovery. The plaintiffs had only provided the potential recovery of overtime and meal and rest period claims but not the statutory penalties. The district court determined that "without more information, the Court cannot determine the settlement amount was fair." *Id*. Class Counsel here has provided none of these.[2]

---

[2] In contrast, approval is possible where Class Counsel has provided comprehensive analysis of the maximum exposure relative to gross recovery (assuming, of course, that information shows the proposed settlement represents an appropriate share of the potential recovery, discounted for the likelihood of prevailing on the merits). In *Stoddart v. Express Servs.*, No. 212CV01054KJMCKD, 2020 WL 5944449, at *9-10 (E.D. Cal. Oct. 7, 2020), the Court granted a renewed motion for preliminary approval after "[p]laintiff had previously argued the $10 million settlement represented 40 percent of defendant's total exposure, but the court did not have enough information to determine to determine a reasonable valuation of the meal period claim, and plaintiff had not accounted for the value of other claims. As a result, the court could not determine if the gross settlement was proportionate to the approximate value of the recovery." *Id*. (citing *Cotter v. Lyft F.Supp.* 3d at 931). Likewise in *Maciel v. Bar 20 Dairy, LLC*, No. 117CV000902DADSKO, 2020 WL 5095885, at *13-15 (E.D. Cal. Aug. 28, 2020), the court approved the $450,000 settlement after plaintiffs provided the maximum potential damages for unpaid wages and civil penalties. *Id*. at *14. *In Ferrell v. Buckingham Prop. Mgmt.*, No. 119CV00332LJOSAB, 2020 WL 291042, at *16-19 (E.D. Cal. Jan. 21, 2020, *report and recommendation adopted*, No. 119CV00332NONESAB, 2020 WL 4364647 (E.D. Cal. July 30 2020), the court granted preliminary approval after plaintiffs were able to calculate the value of the claims and the monetary recovery that could potentially be awarded. *Id*. at *16. Lastly, in

---

13

**OBJECTION TO PROPOSED SETTLEMENT**

**(2)** *Class Counsel has failed to provide any evidence concerning the full value of the claims they propose to compromise*

The Motion for Preliminary Approval provides just <u>two</u> facts relevant to whether the Settlement is reasonable: (1) the gross settlement amount of $6,000,000, and (2) the rough number of class members ("over 900"). The motion does not disclose the exact number. (Mot., p. 6:19). An email from Walgreens' lawyers fixes this number at 919. (Gallo Decl., ¶ 6, Exh. 5.) After deducting the requested attorneys' and costs, enhancement awards, the PAGA payment, and the cost of administration (these items total $1,627,500), the net amount average payout to class members from the proposed Settlement would be $4,372.50.

In sum, Class Counsel has at best provided the numerator of the fraction the Court must assess the reasonableness of. Without the denominator—the potential recovery—and a factual and legal justification for the discount from 100%, Class Counsel have failed to meet their burden. The record is insufficient to determine the value of the overtime claims, the rest break claims, the meal break claims, the penalties, the interest, the PAGA claims, or the attorneys fees.

Without this information neither the class nor this Court can make a reasoned and informed determination about the strength of plaintiffs' case balanced against the amount offered in settlement. At no point has Caves' counsel even attempted to justify or rationalize the recovery in comparison to Defendant's exposure.

**(3)** *Class Counsel also has provided no meaningful assessment of the risks of proceeding and probabilities of prevailing*

Concerning the risks of proceeding rather than settling, Class Counsel reports that "the case was in the discovery stage, so there was potential for substantial further litigation, including class certification proceedings, summary judgment, motions related to experts, motions in limine and post-trial motions, as well as likely appeal." (Motion, p. 16:11-15.) This describes class litigation, not anything specific to *this case* that would enable the Court to understand the risks these *Plaintiffs* would if they were to proceed, or justify the 97% discount this settlement gives

---

*Castro v. Paragon Indus., Inc.*, No. 119CV00755DADSKO, 2020 WL 198240, at *13-14 (E.D. Cal. Apr. 27, 2020), the court preliminary approved a settlement where plaintiff estimated the maximum potential damages for plaintiff's claims. Id. at *14.

**OBJECTION TO PROPOSED SETTLEMENT**

Walgreens.

Even after the *Aguilar* Plaintiffs objected to preliminary approval here, *Caves* counsel made no showing justifying the 97% discount, saying that "[r]ecovery on the merits on a class-wide basis is also not guaranteed," that "Defendant vigorously asserted myriad legal and factual grounds for defending this action…," that there are "concerns" about a "lengthy process to establish specific damages," and insinuating with no factual basis that Defendant Walgreens Co. — the nation's largest drug store chain —  may not be viable due to the COVID-19 pandemic.[3] (Reply, p. 13:1-8.) *Caves* has cited nothing indicating the case would not be certified or would not prevail on the merits, or the Walgreens could not pay a judgment exceeding $6 million.

Class Counsel does cites to three cases, from 2009 to 2011, where courts denied certification or decertified manager classes. (Reply, p. 12, fn. 10 citing *Whiteway v. Fedex Kinkos Office & Print. Servs. Inc.*, No. C05-2320 SBA, 2009 WL 952749, at *3 (N.D. Cal. Oct. 2, 2009) (class of store managers was decertified); *Gale v. Winco Foods*, No. C 09-05813 CRB, 2011 WL 3794887, at *1 (N.D. Cal. Aug. 26, 2011) (class certification denied); and *Weigele v. FedEx Group Package Sys., Inc.*, 267 F.R.D. 614, 622 (S.D. Cal. 2010) (class of managers decertified).) But they provide no facts suggesting this case is like those cases in any way that would prevent certification here.

## B. Class Counsel has failed to establish a sufficient basis for the Court to certify the class for settlement purposes

Where, as here, "parties reach a settlement prior to class certification, courts must peruse the proposed compromise to ratify both (1) the propriety of the certification and (2) the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). Federal courts must pay "undiluted, even heightened attention" to class certification requirements in the settlement context. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Molski v. Gleich*, 318 F.3d 937, 946 (9th Cir. 2003). The parties cannot "agree to certify a class that clearly leaves any one requirement unfulfilled," and consequently the court cannot blindly rely on the fact that the parties have stipulate that a class exists for purposes of settlement. *Berry v. Boca*, 2005 WL

---

[3] https://en.wikipedia.org/wiki/Pharmacies_in_the_United_States

**OBJECTION TO PROPOSED SETTLEMENT**

1030248, at *7 (C.D. Cal. May 2, 2005). A class may only be certified if the court is "satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied. *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 161 (1982). The burden is on the party seeking class certification to show that these elements have been met. *Doninger v. Pac. N.W. Bell, Inc.*, 546 F.2d 1304, 1308 (9th Cir. 1977).

Do all California Walgreens store managers spend more than 50% of their time doing hourly work? No admissible evidence before the Court demonstrates this. The proponents of the Settlement have failed to meet their burden here, having provided no admissible evidence concerning the propriety of certifying the proposed class. The Court therefore should deny class certification even for settlement purposes.

C. **The Settlement fails to differentiate between class members who are entitled to Labor Code 203 Penalties and those who are not, with no reasonable justification for failing to do so**

Pursuant to Labor Code Section 203, all class members whose employment ended more than 30 days before the end of the class period are entitled to an additional 30 days of pay based on Walgreens' failure to pay them all wages due upon termination of their employment. The Settlement does not differentiate between the former employees who have this valuable claim (and those class members who do not. This violates the requirement of Rule 23(e)(2)(D) to treat the Class members equitably relative to each other: It is inequitable to allocate certain class members' right to a month's pay to other class members, to ignore the value of some patently valid claims, and to treat class members with those claims the same as those without them.

D. **The Settlement is Too Low**

The Settlement would to release any and all claims to unpaid wages, penalties, interest and attorney's fees by more than 900 putative class members. Using Defendant's own "conservative assumptions" employed in the *Aguilar* action, Defendant's liability to the putative class is approximately $193,000,000. Yet, the current settlement of $6,000,000 only seeks to pay class members approximately 3 percent of the value of their claims. Class Counsel offers no justification for giving Walgreens this 97% discount, and it is in fact insupportable, rendering the Settlement too low and unsupported to be approved. See *Hunt v. VEP Healthcare, Inc.*, No. 16-

CV-04790-VC, 2017 WL 3608297, at *1 (N.D. Cal. Aug. 22, 2017) (approval denied when proposed settlement was only 4.3% of total exposure without thorough explanation of reasons for discount); see also *Murray v. Scelzi Enterprises, Inc.*, No. 1:18-CV-01492-LJO-SKO, 2019 WL 6045146, at *10 (E.D. Cal. Nov. 15, 2019) (approval denied where settlement was 3.3% of total exposure).

As detailed above, Objector's counsel's own investigation further shows Walgreens assumptions were indeed conservative, as Class Counsel knows if they actually did any substantive discovery or investigation. The true value of the Class Members' claims substantially exceeds $193 million. (Objector's counsel hereby offers to prove as much, as and when appropriate.) Either Class Counsel has not spoken with the class members or otherwise determined the facts, or perhaps they do not want to know the true strength and value of the case. Either way, the record does not support approval, but rather compels disapproved.

E. **The Settlement releases claims from more workweeks than class members are being paid for**

Class members who have been employed throughout the entire statutory limitations period being settled here have received class notices that indicate their estimated share of the Settlement is based on 288 workweeks. (Objector's counsel hereby offers to prove as much, as and when appropriate. A review of the individualized Class Notices shows this fact.) The Class Notice defines the "Class Period" as from October 16, 2014 to August 24, 2020, the date of Preliminary Approval. The Class Notice defines "Compensable Workweeks" as "the number of workweeks in which each Settlement Class member worked during the Class Period." A simple count reveals there were 305.7 weeks during the Class Period. The *Caves* parties provide no explanation in the Class Notice or elsewhere as to why the Settlement is not paying those class members employed throughout the Class Period for 17.7 workweeks, or roughly a four-and-a-half-month period for which the class will give a release if the Settlement is approved.

F. **The Settlement seeks to release a claim that was not litigated**

Only after the proposed Settlement was reached was the operative complaint amended to include an overtime claim—the single most valuable claim in this litigation. [Dkt. 42.] *Caves*

17

**OBJECTION TO PROPOSED SETTLEMENT**

counsel claim only that they  received and evaluated information concerning overtime at mediation. So no adversarial discovery has been conducted. And, there is no reason to believe Class Counsel has any verified evidence concerning the value of the overtime claim. The Court should not approve the Settlement under these circumstances, particularly considering the available information about that claim's value.

G.     **The Caves parties' Memorandum of Understanding was not presented to the court**

In reviewing a proposed settlement for approval, Fed.R.Civ.P. Rule 23(e)(2)(iv) requires the parities submit to the Court any agreement required to be identified under Rule 23(e)(3). Rule 23(e)(3) requires the parties seeking approval to file a statement identifying any agreement made in connection with the proposal. The 2018 Amendment Committee Notes on Rules for Rule 23(e)(2) states that it "aims [] at related undertakings that, although seemingly separate, may have influenced terms of the settlement by trading away possible advantages for the class in return for advantages for others....The court may direct the parties to provide to the court or other parties a summary or copy of the full terms of any agreement not identified by the parties that the court considers relevant to its review of the proposed settlement."

Here, the *Caves* parties reached a settlement no later than February 11, 2020 and submitted their motion for preliminary approval on June 22, 2020, with the long-form settlement attached as an exhibit. The parties presumably executed a term sheet or memorandum of understanding ("MOU") to memorialize their agreement reached through the mediator before negotiating and executing the long-form settlement. The *Caves* parties thus far have not provided the Court with the MOU. The MOU must be disclosed pursuant to Rule 23(e)(2), especially in light of the objections identified herein. It may reflect undisclosed, material changes between the MOU and long-form settlement that class members should have at their possession to evaluate the settlement overall.

H.     **The Settlement makes opting out unreasonably difficult**

The Settlement provides only one way to do opt out of the settlement—by mail—without any justification for eliminating readily available and reasonable alternatives. Online and email

**OBJECTION TO PROPOSED SETTLEMENT**

opt-out processes are commonplace. Email and online options take less time, trouble, and expense for class members than mail. Email even costs less for the administrator to manage than processing paper mail, since no envelope opening and paper handling is required.

I.    **The Settlement seeks to expand the statute of limitations beyond the statute covered by Caves, further evidence that the Settlement is the product of a reverse auction**

The *Morales* action was filed on October 16, 2018. The *Caves* action was filed two weeks later, on November 2, 2018. The statute of limitations for a claim under Calif. Bus. & Professions Code § 17200 is four years. Calif. Bus. & Prof. Code § 17208. Therefore, the statute of limitations for the *Caves* action goes back to November 2, 2014. But, the class period covered by the Settlement goes back to October 16, 2014, *i.e.*, the statutory coverage of the *Morales* putative class action. (Dkt. No. 32-2, Ex. A, Settlement Agreement, § I.G.)   As with respect to the overtime claim, Class Counsel is free riding on the work of *Morales'* counsel to expand the statute of limitations in *Caves*.

This expansion is yet another aspect of the Settlement that reveals it as the product of a reverse auction. Defendant chose the weaker lawyers and plaintiff to settle with. *Caves* counsel were more than willing to agree to any settlement terms in order to secure their fees to the detriment of the class, giving a 97% discount on claims they have never investigated, and releasing claims from periods this lawsuit does not cover.

J.    **The Settlement does not pay uncashed checks to class members, and the designated cy pre recipient is a pet charity of Walgreens with no connection to the claims or the class—further evidence of the reverse auction nature of the Settlement**

The proposed Settlement proposes that the National Association of Minority Owned Law Firms (NAMWOLF) be designated as the *cy pres* for all uncashed checks of putative class members. (Dkt. 32-2, Ex. A, Section N.1(d).) This is improper.

First, the money should be deposited into the State of California's unclaimed property fund in the name of the class member. Depositing the funds from uncashed checks is consistent with Cal. Code Civ. Proc. § 384 ("It is the policy of the State of California to ensure that the … unclaimed or abandoned funds in class action litigation are distributed, to the fullest extent

**OBJECTION TO PROPOSED SETTLEMENT**

possible, in a manner designed either to further the purposes of the underlying class action or causes of action, or to promote justice for all Californians. The Legislature finds that the use of funds for these purposes is in the public interest, is a proper use of the funds, and is consistent with essential public and governmental purposes.").

Second, NAMWOLF has no relationship to the concerns raised in this California wage and hour (misclassification) class action. "Cy pres distributions must account for the nature of the plaintiffs' lawsuit, the objectives of the underlying statutes, and the interests of the silent class members, including their geographic diversity." *Naschin v. AOL, LLC*, 663 F.3d 1034, 1036 (9th Cir. 2011); see also, C.C.P. § 384 ("the court shall amend the judgment to direct the defendant to pay the sum of the unpaid residue or unclaimed or abandoned class member funds, plus and interest that has accrued thereon, to nonprofit organizations or foundations to support projects that will benefit the class or similarly situated persons, or that promote the law consistent with the objectives and purposes of the underlying cause of action, to child advocacy programs, or to nonprofit organizations providing civil legal services to the indigent.")

While promotion of minority-owned law firms is a worthy cause, NAMWOLF, based in Chicago, Illinois, has no nexus whatsoever to the *Caves* lawsuit, the objectives and enforcement of California wage and hour law, or the interests of the California class members.

Third, in another troubling example of the reverse auction nature of this proposed settlement, the designation of NAMWOLF appears to be driven entirely by Defendant, which has an ongoing relationship supporting NAMWOLF that was not disclosed to this Court. [4]

K. **The Settlement provides favorable tax treatment for Walgreens at Class Members' expense—further evidence of the reverse auction nature of the Settlement**

Highlighting the collusive nature of the proposed settlement, the settlement apportions class members' payments as 20% wages, 40% penalties and 40% interest for tax purposes. (Dkt. 32-2, Ex A, § III.N.1(b).) No justification is offered for this arbitrary apportionment that is

---

[4] See https://www.businesswire.com/news/home/20190917005930/en/Inclusion-Initiative-companies-hit-1.6-billion-cumulative. "'Walgreens' legal division is proud to support NAMWOLF and the Inclusion Initiative through its expanded use of minority-and-women-owned law firms,' said Elena Kraus, general counsel, Walgreens."

divorced from the actual value of the claims.

But by apportioning 80% to interest and penalties, *Caves* counsel has agreed to a drastic reduction of *Defendant's* payroll tax obligations at Class members' expense. The apportionment does not reflect Defendant's estimated exposure for all the claims alleged, but will result in class members having to calculate and pay the taxes on penalties, potentially at a higher rate, and losing out on employer contributions to social security, etc. The only apparent justification for this completely arbitrary apportionment is to reduce Defendant's payroll tax exposure at the expense of class members.

L.    **This is a collusive, reverse auction settlement that requires close scrutiny and should not be approved**

(1) *Reverse auctions harm class members*

Class action settlements always require judicial scrutiny given the absent class members' important interests at stake, the absence of conventional adversarial briefing (i.e., because the preliminary approval motion is unopposed or even joint), and the societal interest in robust protection of public rights. *See Boyd v. Avanquest N. Am. Inc*, No. 12-cv-4391-WHO, 2015 WL 4396137, at *2 (N.D. Cal. July 17, 2015) (Orrick, J.) (denying preliminary approval and explaining that review must include the settlement negotiations, the terms of the settlement, including if it "grant[s] preferential treatment to class representatives or segments of the class" and whether it "falls within the range of possible approval" (quoting *State of Cal. v. eBay, Inc.*, No. 12-cv-5874-EJD, 2014 WL 4273888, at *5 (N.D. Cal. Aug. 29, 2014)). Where there are indicia of a reverse auction, a court should undertake an especially careful analysis.[5] The Court's role is to protect class members interest particularly where, as here, Class Counsel appears to be advocating for the Settlement, not the Class..

A reverse auction is a defendant's attempt to reach a low-value class deal with a plaintiff

---

[5] Recognizing the importance of a robust review of the settlement *before* preliminary approval, Rule 23 was recently amended "to address issues related to settlement," *see* Fed. R. Civ. P. 23 advisory committee note to 2018 amendment, and the Northern District recently updated and expanded its guidance to attorneys seeking approval of class settlements. *Procedural Guidance for Class Action Settlements*, N. D. Cal., https://cand.uscourts.gov/ClassActionSettlementGuidance.

**OBJECTION TO PROPOSED SETTLEMENT**

on tenuous footing, with the goal of precluding other representative claims that are being litigated

from a position of greater strength. *See Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 282 (7th

Cir. 2002) (Posner, J.) (defining a reverse auction as "the practice whereby the defendant in a

series of class actions picks the most ineffectual class lawyers to negotiate a settlement with in the

hope that the district court will approve a weak settlement that will preclude other claims against

the defendant"); 4 William B. Rubenstein, Newberg on Class Actions § 13:57 (5th ed. 2018)

(explaining the primary "problem in the reverse auction situation is that the class's interests have

been sold out, and class members will get less than the full value of their claims"); Standards and

Guidelines for Litigating and Settling Consumer Class Actions, 299 F.R.D. 160 (3d ed. 2014)

("[In a reverse auction] a defendant proposes a cheap settlement and shops around among

plaintiffs' counsel until the defendant finds a lawyer willing to settle on its terms. The potential

for collusion and abuse is obvious if a lawyer agrees to a bad deal in order to secure fees.").

**(2)** ***The Settlement is the result of a reverse auction and should be disapproved***

In evaluating the indicia of a reverse auction, courts give special attention to the existence

of parallel cases that seek the same relief for the same or similar classes, *see Blair v. Equifax

Check Servs., Inc.*, 181 F.3d 832, 838 (7th Cir. 1999); plaintiff's counsel "negotiat[ing] from a

position of weakness, *Figueroa*, 517 F. Supp. 2d at 1322; the "broadening of . . . claims, . . . made

to assure [the defendant] that all possible claims could be resolved in [the settling] case," *id.* at

1323; inadequate settlement amounts, *see Cullan and Cullan LLC v. M-Qube, Inc.*, 2014 WL

347034, at *9 (D. Neb. January 30, 2014); and the lack of "formal discovery or preliminary

motion practice" in the settling case, *id. See Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135

(11th Cir. 2005) ("Where two actions involving overlapping issues and parties are pending in two

federal courts, there is a strong presumption across the federal circuits that favors the forum of the

first-filed suit under the first-filed rule."); *Plant Insulation Co. v. Fibreboard Corp.*, 274 Cal.

Rptr. 147, 150 (Cal. Ct. App. 1990) ("Under the rule of exclusive concurrent jurisdiction, 'when

two superior courts have concurrent jurisdiction over the subject matter and all parties involved in

litigation, the first to assume jurisdiction has exclusive and continuing jurisdiction over the

**OBJECTION TO PROPOSED SETTLEMENT**

subject matter and all parties involved until such time as all necessarily related matters have been resolved.'" (quoting *Cal. Union Ins. Co. v. Trinity River Land Co.*, 163 Cal. Rptr. 802, 805 (Cal. Ct. App. 1980)).

Two commentators have identified certain "yellow flags" of collusion:

> First is the situation in which the judge observes evidence of a reverse auction settlement. Markers of a reverse auction include the presence of overlapping class actions involving similar claims against the same defendant; settlement discussions initiated by the defendant; settlement bargaining limited to one of the competing groups of plaintiffs' attorneys; settlement with the group of attorneys who present a less substantial threat of carrying the case forward to trial; lack of an extended process of settlement bargaining; agreements that promote the award of lucrative and potentially justified attorneys' fees; and sudden expansion of the scope of the settled case (for example, by converting the action from a statewide to a nationwide class).

*Jonathan R. Macey & Geoffrey P. Miller, Judicial Review of Class Action Settlements*, 1 J. Legal Analysis 167, 191-94 (2009); cf. *Dalchau v. Fastaff, LLC*, No. 17-cv-01584-WHO, 2018 WL1709925, at *4 (N.D. Cal. Apr. 9, 2018) (Orrick, J.) (considering the timing of a settlement, "the way in which it came about," and the lack of "vigorous[] litigat[ion]" of classwide claims in the settling case in concluding that a settlement "plausibly reflect[s] an attempt on the part of [the defendant] to undercut [the plaintiff] in the instant action" and escape liability).

This Settlement has the markers of a classic reverse auction, suffering from each of the above-listed and/or discussed defects, bearing no relationship to the value of the claims, and attempting to avoid providing the Court with any information upon which to determine that reality. In its role as protector of the class in reviewing the proposed settlement, the Court should decline to approve it based on each of the above discussed defects.

The *Morales* action, with its more experienced plaintiffs' counsel, was stayed pending class certification in the *Caves* action. In obtaining that stay, Defendant represented that class certification was imminent in *Caves*. But after being granted a stay in *Morales*, the *Caves* parties stipulated to extend their class certification deadline twice before mediating the case and reaching a settlement more than a year later — all without class certification ever being heard or decided

**OBJECTION TO PROPOSED SETTLEMENT**

by this Court, or indeed any class certification brief being filed or evidence being submitted. This timeline shows that the *Caves* Plaintiffs were motivated to accept an inadequate settlement precertification to avoid an adverse class certification decision that would open the door to have the stay lifted in *Morales* and more experienced counsel allowed to litigate these claims fully, or at least to a fairer compromise, in *Morales*.

The docket in this case further reinforces the non-adversarial and likely collusive nature of the proposed settlement. *The Motion for Preliminary Approval was only the 32nd-filed document on this case's docket.* The parties did not engage in any motion practice, or bring a discovery dispute before the Court. We are unaware of even a privacy notice being sent to the putative class giving class members the option to disclose their contact information to *Caves* counsel, a common feature in wage and hour class actions of this size. It seems highly probable that Caves counsel has communicated with precious few class members, and therefore remains intentionally ignorant of the true value of the claims as described above, as an Objector's counsel has no offered on the record to prove.

In light of the haste in which the parties settled, the settlement amount relative to Defendant's exposure, and the failure to support the settlement with specific information regarding the potential value of the claims and the specific bases for discounting them, the Court should not rule out collusion. Indeed, the Settlement contains one of the "subtle signs" of a collusion in that it has a "clear sailing agreement" where Defendant agreed not to object to Class Counsel's fee request. (Dkt. 32-2, Settlement Agreement § III.N.3; see *Roes 1-2, supra,* at 1048-49.

## 5.    **Conclusion**

In light of the foregoing, Objector Barbarito Ruan Vasquez, on behalf of the class, asks and submits that the Court should deny final approval to the proposed settlement.

**OBJECTION TO PROPOSED SETTLEMENT**

DATED:  October 26, 2020

**RESPECTFULLY SUBMITTED,**

**WYNNE LAW FIRM**
**GALLO LLP**


By:  _/s/ Ray E. Gallo_
Ray E. Gallo
Attorneys for Objector Barbarito Ruan
Vasquez

25
**OBJECTION TO PROPOSED SETTLEMENT**