Chiharu Sekino (SBN 306589)
csekino@sfmslaw.com
**SHEPHERD, FINKELMAN, MILLER & SHAH, LLP**
1230 Columbia Street, Suite 1140
San Diego, CA 92101
Telephone: (619) 235-2416
Facsimile: (866) 300-7367

James C. Shah (SBN 260435)
jshah@sfmslaw.com
**SHEPHERD FINKELMAN MILLER & SHAH, LLP**
1845 Walnut Street, Suite 806
Philadelphia, PA 19103
Telephone: (610) 891-9889
Facsimile: (866) 300-7367

Attorneys for Plaintiffs, GLORIA CAVES and TAMIM KABIR

[*Additional Counsel for Plaintiffs listed on signature page*]

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION

| | |
|---|---|
| GLORIA CAVES and TAMIM KABIR, On Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>WALGREEN CO.,<br><br>Defendant. | Case No. 2:18-cv-02910-MCE-DB<br><br>**REPLY IN SUPPORT OF PLAINTIFFS' *EX PARTE* APPLICATION FOR CORRECTIVE NOTICE TO THE CLASS AND ADDITIONAL OPT-OUT PERIOD**<br><br>Judge: Hon. Morrison C. England, Jr.<br>Courtroom: 7, 14th Floor |

REPLY ISO PLAINTIFFS' *EX PARTE* APPLICATION FOR CORRECTIVE NOTICE TO THE CLASS AND
OPT-OUT PERIOD

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

I.  INTRODUCTION ........................................................................................................................ 1

II.  OBJECTOR COUNSEL DO NOT AND CANNOT ESTABLISH THAT THE STATEMENTS AT ISSUE WERE ACCURATE STATEMENTS OF FACT .............. 2

III.  OBJECTOR COUNSEL'S REPRESENTATIONS INVOLVE AN INHERENT CONCURRENT CONFLICT OF INTEREST .............................................................. 4

IV.  THERE IS CONCERN THAT THE ATTORNEY-CLIENT RELATIONSHIPS AT ISSUE ARE NOT *BONA FIDE* ................................................................................. 5

V.  THE *MORALES* ORDER IS INAPPLICABLE TO THE UNAPPROVED NOTICE ........................................................................................................................ 8

VI.  CONCLUSION ........................................................................................................... 9

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ames v. State Bar*,
  8 Cal.3d 910 (1973) ........................................................................................................ 4

*Cunningham v. Connecticut Mut. Life Ins.*,
  845 F. Supp. 1403 (S.D. Cal. 1994) ................................................................................ 7

*Flatt v. Superior Court*,
  9 Cal. 4th 275 (1995) ...................................................................................................... 4

*Fracasse v. Brent*,
  6 Cal. 3d 784 (1972) ....................................................................................................... 6

*Georgine v. Amchem Prod., Inc.*,
  160 F.R.D. 478 (E.D. Pa. 1995) ...................................................................................... 4

*In re Carter*,
  62 B.R. 1007 (Bankr. C.D. Cal. 1986) ............................................................................ 7

*In re Corn Derivatives Antitrust Litig.*,
  748 F.2d 157 (3d Cir. 1984) ............................................................................................ 4

*Jacobs v. CSAA Inter-Ins.*,
  2009 WL 1201996 (N.D. Cal. May 1, 2009) .................................................................. 8

*Kayes v. Pac. Lumber Co.*,
  51 F.3d 1449 (9th Cir. 1995) ........................................................................................... 5

*Klemm v. Superior Court*,
  75 Cal. App. 3d 893 (Ct. App. 1977) .............................................................................. 5

*Lou v. Ma Laboratories, Inc.*,
  2014 WL 68605 (N.D. Cal. 2014) ................................................................................... 5

*Moreno v. Autozone, Inc.*,
  2007 WL 4287517 (N.D. Cal. Dec. 6, 2007) .................................................................. 4

*Norris v. People's Credit Co.*,
  2013 WL 5442273 (N.D. Ohio Sept. 27, 2013) .............................................................. 3

*Ortiz v. Fibreboard Corp.*,
  527 U.S. 815 (1999) ........................................................................................................ 5

*Parks v. Eastwood Ins. Services, Inc.*,
  235 F.Supp.2d 1082 (C.D.Cal.2002) ........................................................................................8

*Schiller v. David's Bridal, Inc.*, No. 1:10-CV-00616 AWI,
  2010 WL 2793650 (E.D. Cal. July 14, 2010) ..........................................................................3

*Sullivan v. Chase Inv. Servs. of Bos., Inc.*,
  79 F.R.D. 246 (N.D. Cal. 1978) ...............................................................................................5

*Wells Fargo Bank*, N.A.,
  254 F.R.D. 568 (N.D. Cal. 2008) .............................................................................................6

**<u>Rules</u>**

Cal. Rule. Prof Conduct, Rule 1.7 .......................................................................................................4

Cal. Rule. Prof Conduct, Rule 4.2 .......................................................................................................8

FRCP 23 ...............................................................................................................................................8

## I. INTRODUCTION

As set forth in the *Ex Parte* Application for Corrective Notice to the Class and Opt-Out Period ("Application") of Plaintiffs, Gloria Caves and Tamim Kabir ("Plaintiffs"), attorneys from Wynne Law Firm and Gallo LLP ("Objector Counsel") sent a "Notice" that had every appearance of a Class Notice approved by, and emanating from, this Court, containing demonstrably false and misleading statements about the proposed Settlement in this matter, along with an "Opt-Out card" that Class members were directed to sign and return ("Unapproved Notice"). Class Counsel believe, and the Application presents evidence, confirming that this Unapproved Notice misled Class members to complete and submit the purported Opt-Out card that was sent to them by Objector Counsel.

Class Counsel have an obligation to assure that the Class receives accurate, and not misleading, information. However, the entirety of the communications from Objector Counsel and, in particular, the Unapproved Notice to the Class, calls into question whether Class members have received – and acted upon – accurate communications. As a result, Class Counsel filed this Application to invalidate and have a curative notice sent to *all recipients of the Unapproved Notice*, and to provide a reasonable period during which, after receiving the curative notice, those Class members can determine whether to opt out, or remain in the Class.

Class Counsel thoroughly litigated this case and entered into a settlement that they believe to be fair and which provides substantial benefits to the Class. There are approximately 919 Class members, and 103 Opt-Outs have been submitted, which means that at least 816 Class members, or 89%, elected to remain in the Class and participate in the Settlement, including a number of Objector Counsel's clients.[1] Class Counsel understand and respect that Class members have the right to opt-out of the Settlement if they decide they want to pursue individual litigation. Indeed, these rights are explicitly laid out in the Class Notice. *See* [ECF 56-4, pp. 5-6]. Nevertheless, Class members must, of course, be able to exercise these rights in a knowing and voluntarily manner, free from misleading communications such as the Unapproved Notice. As such, Plaintiffs

---

[1] Based on Objector Counsel's filings, they believe they signed up somewhere between 142 and 144 clients as a result of their multiple communications. [ECF 52 at 10:11-12; ECF 59-1 at ¶ 7.]

REPLY ISO PLAINTIFFS' *EX PARTE* APPLICATION FOR CORRECTIVE NOTICE TO THE CLASS AND OPT-OUT PERIOD

1

request that their Application be granted.

## II. OBJECTOR COUNSEL DO NOT AND CANNOT ESTABLISH THAT THE STATEMENTS AT ISSUE WERE ACCURATE STATEMENTS OF FACT

In their Application, Plaintiffs identified eight factual inaccuracies about the Settlement in the Unapproved Notice. To avoid having to rebut these statements, Objector Counsel attempt to excuse their actions by stating that they do want to waive attorney-client privilege, but would provide limited responses to the claims that the statements were misleading. Opposition to Plaintiffs' *Ex Parte* Application for Corrective Notice to the Class and Additional Opt Out Period ("Opp.") [ECF 59] at 9. This sidestep is not satisfactory, and nothing has precluded them from attempting to explain the identified inaccuracies in the Unapproved Notice.

Out of the eight factual inaccuracies highlighted by Plaintiffs, Objector Counsel provide half-hearted explanations to only three. Tellingly, Objector Counsel do not refute the fact and/or provide an explanation as to why it was proper for them to: (1) fail to reveal the strong personal pecuniary interests of the drafters of the Unapproved Notice and the fact that they are not neutral observers; (2) make statements that imply that Walgreen Co. ("Walgreen") has either admitted to wrongdoing or liability has been established in the matter; (3) provide the wrong hearing date; (4) state that the Settlement was not fair, without explaining that this is *their* opinion; and (5) state that an appeal will be filed if the Settlement is approved. *See* [ECF 56-1, pp. 7-8]

Moreover, the limited responses Objector Counsel did provide do not explain why the Unapproved Notice is anything but misleading. For example, the explanation provided as to why the *Caves* caption was used by Objector Counsel is nonsensical - "to identify [the Unapproved Notice] as concerning the *Caves* litigation." Opp. at 10:9-10. If Objector Counsel were certain their "clients" understood the case Objector Counsel were purporting to represent them in and litigate on their behalf, there would be no need to present the communication in such a fashion. Objector Counsel's response pointedly ignores the other issues identified, including that: (1) the *Caves* case name was on the outside of the mailing envelope; (2) the Unapproved Notice was patterned after the format of the Court-approved Notice, including the use of the caption,

headings, formatting of the document and the way in which Objector Counsel's names and addresses were set-off in boxes.

The lack of response to these issues by Objector Counsel is not surprising, because there is no adequate response.  One simply cannot review the communication by Objector Counsel - in a case in which they are *not* counsel of record - using the name of the *Caves* case as the return address on the envelope, with the Court's caption and in a format that mirrors the Court-approved Notice, without concluding that it is exactly what it appears to be - a communication intended to appear to be a Court-approved notice seeking to convince persons to opt out of the *Caves* Class.

Next, Objector Counsel attempt to justify their value analysis as their "legal opinion" but nowhere in the Unapproved Notice does it say that this is their opinion or explain what will happen as their individual cases move forward.  Opp. at 10:12-13.  Finally, Objector Counsel continue to attempt to explain their valuation opinion as being based on evidence that Walgreen filed in support of removal in the *Aguilar* mass action they are litigating, but provide absolutely no legal basis for the use of a statement in a removal petition as proof of the value of a case or as proof of damages.  "In considering a motion for remand, '[t]he question is not what damages the plaintiff will recover, but what amount is 'in controversy' between the parties.'"  *Norris v. People's Credit Co.*, No. 1:12CV3138, 2013 WL 5442273, at *3 (N.D. Ohio Sept. 27, 2013); *see also Schiller v. David's Bridal, Inc.*, No. 1:10-CV-00616 AWI, 2010 WL 2793650, at *6 (E.D. Cal. July 14, 2010) ("amount in controversy is determined by universe of what the plaintiff puts at-issue in the complaint").  Moreover, the same removal papers cited by Objector Counsel make it clear that Walgreen denied any and all liability, and believes it owes the Class nothing.  Yet, Objector Counsel represented to the Class members in the Unapproved Notice that "Walgreens [sic] filed papers in federal court stating how much your claims were worth and the average was more than $200,000 per person."  [ECF 56-3, p. 3.]  This is false and Objector Counsel do not even attempt to justify this statement.

### III. OBJECTOR COUNSEL'S REPRESENTATIONS INVOLVE AN INHERENT CONCURRENT CONFLICT OF INTEREST

Attorneys owe certain elementary duties to clients, including undivided loyalty. *Flatt v. Superior Court,* 9 Cal. 4th 275, 289 (1995); Cal. Rule. Prof Conduct ("CRPC"), Rule 1.7. A conflict of interest exists when a lawyer's duty on behalf of one client obligates the lawyer to take action prejudicial to the interests of another client, *i.e.*, "when in behalf of one client, it is his duty to contend for that which duty to another client requires him to oppose." *Moreno v. Autozone, Inc.*, No. C05-04432 MJJ, 2007 WL 4287517, at *4 (N.D. Cal. Dec. 6, 2007) (disqualifying counsel, finding an actual conflict of interest existed when counsel represented those who elected to stay in the settlement as well as those who objected). An "adverse" interest is one that is "hostile, opposed, antagonistic ... detrimental, unfavorable" to one's own interests. *See Ames v. State Bar*, 8 Cal.3d 910, 917 (1973).

From the moment an attorney files an objection to a settlement, that attorney has his or her own agenda and interests that are adverse to all of the class members who did not opt out of the case:

> It is disingenuous for counsel representing Objectors to imply that their interests are always aligned with those of all class members. Attorneys representing clients who object to the settlement because both attorney and client believe that they could obtain greater compensation in [litigation] would have interests that are adverse from those of a class member who would have difficulty proving liability and whose best avenue for compensation would be the [] settlement.

*Georgine v. Amchem Prod., Inc.*, 160 F.R.D. 478, 495 (E.D. Pa. 1995); *see also In re Corn Derivatives Antitrust Litig.*, 748 F.2d 157, 162 (3d Cir. 1984) (disqualifying counsel representing objector to class action settlement on appeal because his firm had previously represented class members who supported the settlement).

Here, in addition to objecting to the Settlement on behalf of one Class member, Objector Counsel submitted a declaration stating that he is ***advising some of his clients to remain in the Class, while advising others to opt-out of the Class*** to pursue their own individual litigation. *See* ECF 59-1; Gallo Decl., ¶ 7 ("Some of our clients were advised to opt-out and some were

advised to stay in Caves"). Even worse, in the Unapproved Notice, Objector Counsel indicate that their plan is to appeal the decision if the Settlement gets approved, a position potentially adverse to Objector Counsel's clients that they have advised to remain in the Class. *See* [ECF 56-3, p. 3 ("Even if the Court does approve the *Caves* settlement, that decision will be appealed.")

Moreover, Objector Counsel are prosecuting claims against the same Defendant in different actions, which further creates the potential for conflicts of interest because it places the Class at risk that its interests will be compromised for the benefit of the parties in another action.² *Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1465 (9th Cir. 1995) (affirming district court's order directing plaintiffs' counsel to withdraw from conflicting representation, providing that "[t]he responsibility of class counsel to absent class members whose control over their attorneys is limited does not permit even the appearance of divided loyalties of counsel"); *Sullivan v. Chase Inv. Servs. of Bos., Inc.*, 79 F.R.D. 246, 258 (N.D. Cal. 1978) ("[b]ecause this putative class and the [plaintiffs in a parallel case against the same defendant] have conflicting interests in the course of each litigation, counsel cannot represent both"). Objector Counsel have an actual concurrent conflict of interest; thus, they had and have a duty to advise their so-called clients of all the relevant facts and circumstances pertaining to their actual conflict so that these clients can make an informed decision as to whether to consent to the representation, despite the conflict. *Klemm v. Superior Court,* 75 Cal. App. 3d 893, 901 (Ct. App. 1977). There is no basis to believe that Objector Counsel have provided this information to their clients.

### IV.   THERE IS CONCERN THAT THE ATTORNEY-CLIENT RELATIONSHIPS AT ISSUE ARE NOT *BONA FIDE*

Objector Counsel argue that the Unapproved Notice was proper because it was "legal

---

² "The Supreme Court has stated that an attorney who currently represents another class against the same defendant may not serve as class counsel." *Lou v. Ma Laboratories, Inc.* 2014 WL 68605, at *2 (N.D. Cal. 2014), citing *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 856 (1999). "When there are different plaintiffs in different actions proceeding at the same time with the same claims, same counsel, and same defendants, the risk of counsel compromising one class for another is intensified." *Lou* at *2.

advice" sent to 52 of their clients[3] and that the communication was privileged. Opp. at p. 6. However, this argument is premised on the unsupported assumption that an attorney-client relationship existed between Objector Counsel and these individuals.

Objector Counsel state that Mr. Tran visited their website on August 3, 2020. Opp., p. 12. As demonstrated by Mr. Tran's Declaration, there is serious question as to whether the attorney-client relationships at issue are, in fact, *bona fide*. Although Objector Counsel ridicule Mr. Tran's Declaration and attack his credibility (Opp., p. 12) (a curious tactic given that they purport to represent him), the documents are self-evident. Thus, even if Mr. Tran may have unwittingly acknowledged a document that Objector Counsel believe to be a "retainer" while participating in what Mr. Tran believed to be a "free qualification survey" on Objector Counsel's website, once he discovered that Objector Counsel had named him as a plaintiff in another case Mr. Tran expressly advised Objector Counsel that he did not wish to participate in that action and asked that he be removed from any proceedings other than the *Caves* class action. [ECF 56-10, ¶¶ 3, 5.][4] Despite this clear request, Objector Counsel continued to send him unsolicited texts and the Unapproved Notice, refused to dismiss him from the *Aguilar* case, and, incredibly, still assert that Mr. Tran is their client even after he submitted his Declaration. Opp., p. 12 ("We intend to dismiss Mr. Tran . . . if and when he so instructs"). *See Fracasse v. Brent*, 6 Cal. 3d 784, 786 (1972) (there is a "strong policy, expressed both judicially and legislatively, in favor of the client's absolute right to discharge his attorney at any time"). Because Mr. Tran was undoubtedly not a client of Objector Counsel, such communication does not come under the

---

[3] Objector Counsel's contention that Class Counsel's Application seeks to invalidate two opt-outs that were submitted on a postcard is based on unintelligible assertions, and is simply untrue. *See* Opp., p. 11. As set forth above, Plaintiffs have requested a corrective notice be sent out to those who received the Unapproved Notice; declare ineffective any Opt-Outs made by Class members who received the Unapproved Notice; and provide for a second Opt-Out period for the persons who received the Unapproved Notice. *See* [ECF 56-1, p. 2].

[4] Given the language in Objector Counsel's solicitations that the Class members could visit their website and see if they qualified for the over $200,000 that Objector Counsel told them they could qualify for, it would not be surprising to learn that Mr. Tran is not the only one that filled out information about qualifying, without understanding he was hiring a lawyer separate and apart from the *Caves* counsel, or that he was answering questions that were not being used to determine whether he qualified for the *Caves* Settlement itself.

REPLY ISO PLAINTIFFS' *EX PARTE* APPLICATION FOR CORRECTIVE NOTICE TO THE CLASS AND OPT-OUT PERIOD

6

purview of attorney-client privilege.[5]

Perhaps unsurprisingly, Objector Counsel provide no information to rebut Mr. Tran's Declaration. While they purport to set forth what unsuspecting Class members who sought to see if they "qualified" for the settlement experienced (Opp., p. 8-9), they provide (i) no copy of any purported retainer agreement; (ii) no screen shots of their intake website, information about walgreens.gallo.law, or the purported "substantial, detailed" intake process or "unambiguous" offer of representation; (iii) no information about any actual *conversations* with their "clients"; and (iv) no explanation of the video(s) on their website. Thus, Objector Counsel have still not provided any legitimate reason to believe that they established attorney-client relationships that were understood as such by the recipients of these communications. Moreover, Objector Counsel's attempt to distinguish the caselaw relied on by Plaintiffs in support of the Court's power to grant the requested relief are unavailing (Opp. pp. 7-8), as the law clearly allows the Court to grant the requested relief.

In addition, Objector Counsel's filings and conduct further underscore Class Counsel's concerns. In their Opposition, Objector Counsel explained that they have subpoenaed the Settlement Administrator "to verify that our clients who submitted opt-outs have had those elections duly received and acknowledged." Opp., p 5. The fact that Objector Counsel are seeking a list from the Settlement Administrator so they can determine who, of their so-called clients, submitted an Opt-Out request, casts substantial doubt on the existence of an attorney-client relationship between these individuals and Objector Counsel.[6] If the individuals are, in fact, Objector Counsel's clients, they should readily be able to contact their clients to determine whether or not they have submitted an opt-out form without the need to request it from the

---

[5] Here, even assuming *arguendo* that an attorney-client relationship existed between Objector Counsel and Mr. Tran, Mr. Tran, who would be the holder of the privilege, expressly waived the privilege. "The attorney-client privilege is not absolute." *Phoenix Sols. Inc. v. Wells Fargo Bank*, N.A., 254 F.R.D. 568, 575 (N.D. Cal. 2008). The client, who "is the holder of the attorney-client privilege," can waive the privilege. *Cunningham v. Connecticut Mut. Life Ins.*, 845 F. Supp. 1403, 1411 (S.D. Cal. 1994) (internal citations omitted); *see also In re Carter*, 62 B.R. 1007, 1015 (Bankr. C.D. Cal. 1986) ("only the client can waive the privilege").

[6] Objector Counsel's statement that Class Counsel have somehow impeded their requests to the Settlement Administrator (Opp., p. 4) is simply incorrect, as Objector Counsel acknowledged in a November 25, 2020 email to Class Counsel.

settlement administrator.

Finally, Objector Counsel admit that they propose to use the subpoenaed contact information to contact *every* Class member, intending to perform some sort of "survey." Opp., p. 5. However, any such contact with the *Caves* Class members is barred. Conditional class certification triggers the "no-contact" rules provided for under CRPC, Rule 4.2. *See, e.g., Jacobs v. CSAA Inter-Ins.*, No. C07-00362MHP, 2009 WL 1201996, at *3 (N.D. Cal. May 1, 2009) (because the "class was conditionally certified for settlement purposes, and the instant class members are represented by plaintiff's counsel [. . . ] The rules of ethical conduct requir[ed] that communications with class members relating to asserted claims in the federal class action are transmitted through counsel for the class"); *Parks v. Eastwood Ins. Services, Inc.*, 235 F.Supp.2d 1082, 1083 (C.D.Cal.2002)  ("[i]n a class action certified under [FRCP 23], absent class members are considered represented by class counsel unless they choose to 'opt out'").

## V.     THE *MORALES* ORDER IS INAPPLICABLE TO THE UNAPPROVED NOTICE

The pending Application involves the Unapproved Notice, not the newsletters or communications sent by Objector Counsel to Class members (although they provide context for the Unapproved Notice). As a result, Objector Counsel's reference to the *Morales* court's limited order finding Objector Counsel's March 2019 newsletter ethically compliant and not misleading is not relevant to this Court's determination of whether the Class members that received the Unapproved Notice should receive a corrective notice. Moreover, the content and format of the Unapproved Notice, as set forth herein, goes well beyond that newsletter. The Unapproved Notice does not disclose that the statements are Objector Counsel's "opinion." Moreover, the statements are not couched in any conditional language, but egregiously declare that Class members are "owed overtime and money for missed breaks going back six years," and that "Walgreens [sic] filed papers . . . stating [that Class members'] [] claims were worth . . . more than $200,000 per person. . . . $200,000 looks about right." *See* [ECF 56-3, p. 3]. All of these statements are based solely upon Objector Counsel's opinion, and do not even attempt to provide context regarding the risks, time, obligations and expense of litigation – which is

particularly ironic since Objector Counsel have acknowledged advising a substantial number of their clients to participate in the Settlement.

VI. **CONCLUSION**

In light of the foregoing, and for all the reasons demonstrated in Plaintiffs' Application [ECF 56-1], Class Counsel respectfully request that the Court: (1) require Objector Counsel to bear the cost of a corrective letter in a form approved by the Court and to be disseminated by the approved Settlement Administrator to the persons who received the Unapproved Notice, correcting the false and misleading statements; (2) declare ineffective any Opt-Outs by Class members who received the Unapproved Notice; and (3) provide for a second Opt-Out period for the persons who received the Unapproved Notice.

Dated: December 4, 2020

/s/ *Chiharu Sekino*
Chiharu Sekino
SHEPHERD, FINKELMAN, MILLER
 & SHAH, LLP
1230 Columbia Street, Suite 1140
San Diego, CA  92101
Telephone: (619) 235-2416
Facsimile: (866) 300-7367
Email:  csekino@sfmslaw.coom

James C. Shah
SHEPHERD, FINKELMAN, MILLER
 & SHAH, LLP
1845 Walnut Street, Suite 806
Philadelphia, PA  19103
Telephone: (610) 891-9880
Facsimile: (866) 300-7367
Email:  jshah@sfmslaw.com

John F. Edgar (*Pro Hac Vice* to be submitted)
EDGAR LAW FIRM LLC
2600 Grand Boulevard, Suite 400
Kansas City, MO  64108
Telephone: (816) 531-0033
Facsimile: (816) 531-3322
Email:  jfe@edgarlawfirm.com
           bmm@edgardlawfirm.com

*Attorneys for Plaintiffs and the Class*

REPLY ISO PLAINTIFFS' *EX PARTE* APPLICATION FOR CORRECTIVE NOTICE TO THE CLASS AND OPT-OUT PERIOD
9

**CERTIFICATE OF SERVICE**

I hereby certify that on December 4, 2020, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notification to all counsel of record.

/s/ *Chiharu Sekino*
Chiharu Sekino
Shepherd Finkelman Miller
& Shah, LLP