1  Ray E. Gallo (SBN 158903)
2  rgallo@gallo.law
   GALLO LLP
3  100 Pine St., Suite 1250
   San Francisco, CA 94111
4  Phone: 415.257.8800

5  Edward J. Wynne (SBN 165819)
6  ewynne@wynnelawfirm.com
   George R. Nemiroff (SBN 262058)
7  gnemiroff@wynnelawfirm.com
   WYNNE LAW FIRM
8  80 E Sir Francis Drake Blvd, Suite 3G
   Larkspur CA 94939
9  Phone: 415.461.6400

10
   Attorneys for Objector
11 Barbarito Ruan Vasquez

12

13              UNITED STATES DISTRICT COURT

14             EASTERN DISTRICT OF CALIFORNIA

15                 SACRAMENTO DIVISION

16
   GLORIA CAVES and TAMIM KABIR,      Case No. 2:18-cv-02910-MCE-DB
17 on behalf of themselves and all others
   similarly situated,                 Hon. Morrison C. England, Jr.
18
19              Plaintiffs,            **MOTION FOR RECONSIDERATION OF
                                       ORDER GRANTING PLAINTIFFS' *EX PARTE*
20       v.                            APPLICATION FOR CORRECTIVE NOTICE
                                       AND REQUEST FOR ORAL ARGUMENT**
21 WALGREEN CO.,

22              Defendant.

23

24

25

26

27

28

                                1

# TABLE OF CONTENTS

**1.    Introduction** ........................................................................................................... **5**

**2.    Argument** ............................................................................................................... **6**

A.   Reconsideration is appropriate upon clear error ................................................ 6

(1)    Ordering corrective notice without specific findings of fact and legal reasoning justifying interference with class members' right to independent legal advice is clear error under Gulf Oil ............................................................................................... 6

B.   Corrective notice based solely on attorney-client communications is dangerous, unwarranted, and unprecedented, and therefore should be denied ................................ 7

(1)    The communication at issue was not a solicitation, but legal advice to clients who had engaged counsel weeks, months, or in one case years before — to advise and represent them concerning the specific claims at issue .......................................................... 7

(2)    The evidence of the attorney-client relationship here is unrebutted, and 51 of the 52 letters at issue remain privileged and confidential, and thus not appropriate for either the ex parte application that was made or any corrective notice ....................................... 9

(3)    The right to opt out under Rule 23 includes the right to independent legal advice concerning whether to exercise it............................................................................. 10

(4)    Corrective notice based on attorney-client communications is unprecedented ........ 13

C.   Unless the Court reverses its order for corrective notice, or writes a detailed order, ECF 66 is clear and reversible error under *Gulf Oil*.............................................................. 13

(1)    This Court's Order does not articulate how the Court weighed the need for a corrective notice against the right of represented class members to receive legal advice from their retained counsel of choice, and thus fails to meet the Gulf Oil standard ..................... 15

**3.    Conclusion**........................................................................................................... **16**

**MOTION FOR RECONSIDERATION OF ORDER FOR CORRECTIVE NOTICE**

**TABLE OF AUTHORITIES**

**CASES**

*Audionics Sys., Inc. v. AAMP of Fla., Inc.*,
    No. CV1210763MMMJEMX, 2015 WL 11201243 (C.D. Cal. Nov. 4, 2015) .......................... 6

*Domingo v. New England Fish Co.*,
    727 F.2d 1429 (9th Cir.), *modified,* 742 F.2d 520 (9th Cir. 1984) ...................................... 7, 13

*Gulf Oil Co. v. Bernard*,
    452 U.S. 89 (1981) ..................................................................................... passim

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ................................................................................. 10

*In re Centurylink Sales Practices and Securities Litigation*,
    Slip Copy, 2020 WL 3512807 (D. Minn. June 29, 2020) ...................................................... 9

*In re Nat'l Football League Players' Concussion Injury Litig.*,
    No. 2:12-md-02323-AB, 2019 WL 95917  (E.D. Pa. Jan. 3, 2019)............................................ 9

*Kutzman v. Derrel's Mini Storage, Inc.*,
    354 F. Supp. 3d 1149 (E.D. Cal. 2018)................................................................ 7, 13, 14

*O'Neal v. Johnson*,
    No. 2:14-CV-2374 DB PS, 2017 WL 2730977 (E.D. Cal. June 26, 2017) .............................. 6

*Phillips Petroleum Co. v. Shutts*,
     472 U.S. 797 (1985) ........................................................................................... 9

*Rojas v. Marko Zaninovich, Inc.*,
    No. CIV-F-09-0705 AWI, 2011 WL 6671737 (E.D. Cal. Dec. 21, 2011) ................................ 6

*Villanueva v. U.S.*,
    662 F.3d 124 (1st Cir. 2011) ................................................................................... 6

**STATUTES**

E.D.Cal. Local Civil Rules,
    Rule 230(j) ..................................................................................................... 5

Federal Rules of Civil Procedure,
    Rule 23 .................................................................................................... passim

**OTHER AUTHORITIES**

Betson, David & Tidmarsh, Jay, *Optimal Class Size, Opt-Out Rights, and "Indivisible Remedies,"* 79 Geo. Wash. L. Rev. 542 (2011) ......................................................... 10

3

**MOTION FOR RECONSIDERATION OF ORDER FOR CORRECTIVE NOTICE**

1

Campos, Sergio, *Mass Torts and Due Process*, 65 Vand. L. Rev. 1059 (2012).............................. 10

Gidi, Antonio, *Loneliness in the Crowd: Why Nobody Wants Opt-out Class Members to Assert Offensive Issue Preclusion against Class Defendants*, 66 SMU L. Rev. 1 (2013).................... 10

Rutherglen, George, *Better Late Than Never: Notice and Opt Out at the Class Settlement Stage of Class Actions*, 71 NYU L.Rev.258 (1996)............................................................... 11

Williams, Ryan C., *Due Process, Class Action Opt Outs, and the Right Not to Sue*, 115 Columbia L. Rev. 599 (2015) ............................................................................................... 10

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MOTION FOR RECONSIDERATION OF ORDER FOR CORRECTIVE NOTICE**

## 1.    Introduction

The right to opt out afforded by Federal Rule of Civil Procedure 23 means little without the right to legal advice from attorneys of the class member's choosing, unfettered by the wishes of the parties to promote their proposed settlement. In *Gulf Oil Co. v. Bernard*, the U.S. Supreme Court held that orders limiting communications with class members must be based on specific findings of fact and stated legal reasoning — consistent with the policies underlying Rule 23 — that justify interfering with the first amendment rights of class members and parties. Courts consistently have applied this rule to orders for corrective notice.

This Court's January 20, 2021 Order Granting Plaintiffs' *Ex Parte* Application for Corrective Notice to the Class and Additional Opt-Out Period (ECF No. 66) (the "Order") — invalidating the two opt-outs (from a class numbering 918) submitted on the postcard form that was enclosed with the letter — omits findings that justify interfering with our clients' right to receive legal advice from the attorneys they hired five weeks to two plus years before the letter at issue to advise and represent them concerning those claims. It further interferes with our right and obligation to control the form and substance of our legal advice. This Court's failure to conform its Order to these requirements is clear error, which is a proper basis for reconsideration.

No detailed justification for denying corrective notice is required. This Court should simply reverse its dangerous, unprecedented, and unwarranted ruling interfering with the process of class members obtaining legal advice from their already-engaged lawyers, and thus with class members' right to opt out. That ruling directly conflicts with a key policy behind Rule 23. If this Court deems it necessary, we can and will submit detailed evidence that these individuals had engaged us as their lawyers for *in camera* review, without waiving the attorney-client privilege.

But if after conducting and documenting the required findings and analysis this Court decides corrective notice regarding requested legal advice remains appropriate, it should (1) clarify its order as to precisely what it feels is misleading, and why, and (2) find facts and legally justify its intrusion into the rights of individual class members to obtain and rely on the advice of their individual lawyers.

**MOTION FOR RECONSIDERATION OF ORDER FOR CORRECTIVE NOTICE**

## 2.    Argument

**A.    Reconsideration is appropriate upon clear error**

A court has the inherent power to reconsider an order when the movant shows that the Court made a clearly erroneous finding or a substantive error of law. *O'Neal v. Johnson*, No. 2:14-CV-2374 DB PS, 2017 WL 2730977 at *1 (E.D. Cal. June 26, 2017) (quoting *Villanueva v. U.S.,* 662 F.3d 124, 128 (1st Cir. 2011)); *Audionics Sys., Inc. v. AAMP of Fla., Inc.*, No. CV1210763MMMJEMX, 2015 WL 11201243, at *7 (C.D. Cal. Nov. 4, 2015) (quotations omitted).

> A finding is clearly erroneous when although there is evidence to support it, the reviewing court, after reviewing the entire evidence, is left with the definite and firm conviction that a mistake has been committed.

*Rojas v. Marko Zaninovich, Inc.*, No. CIV-F-09-0705 AWI, 2011 WL 6671737, at *2 (E.D. Cal. Dec. 21, 2011) (quotation omitted).[1]

**(1)    *Ordering corrective notice without specific findings of fact and legal reasoning justifying interference with class members' right to independent legal advice is clear error under* Gulf Oil**

The Order's failure to make specific findings and provide legal reasoning justifying its interference with the class members' attorney-client communications renders it clearly erroneous:

---

[1] E.D.Cal. Local Civil Rule 230(j) permits a party to file a motion for reconsideration. "Whenever a motion has been granted or denied in whole or in part, and a subsequent motion for reconsideration is made upon the same or any alleged different set of facts, counsel shall present to the Judge or Magistrate Judge to whom such subsequent motion is made an affidavit or brief, as appropriate, setting forth the material facts and circumstances surrounding each motion for which reconsideration is sough, including:

(1) when and to what Judge or Magistrate Judge the prior motion was made;

(2) what ruling, decision, or order was made thereon;

(3) what new or different facts or circumstances are claimed to exist which did not exist or were not shown upon such prior motion, or what other grounds exist for the motion; and

(4) why the facts or circumstances were not shown at the time of the prior motion.

The *ex parte* application for corrective notice at issue here was made to this Court, Judge Morrison C. England, Jr.. The Court's  order disposing of that application, ECF 66, granted that *ex parte* but failed to meet the *Gulf* standard requiring detailed findings and reasoning when granting corrective notice. ECF 66 followed the filing of the opposition, and thus did not exist then, and thus its defects did not exist, were not known, and could not have been addressed then.

**MOTION FOR RECONSIDERATION OF ORDER FOR CORRECTIVE NOTICE**

> [A]n order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties. Only such a determination can ensure that the court is furthering, rather than hindering, the policies embodied in the Federal Rules of Civil Procedure, especially Rule 23. In addition, such a weighing— identifying the potential abuses being addressed—should result in a carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances.

*Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981).

Courts consistently have applied *Gulf Oil's* requirement of specific findings (and limited action) to all stages of litigation, and specifically to corrective notices, including those concerning communications by lawyers seeking to represent opt-outs. See, *e.g.*, *Kutzman v. Derrel's Mini Storage, Inc.*, 354 F. Supp. 3d 1149, 1159 (E.D. Cal. 2018) (collecting cases); *Domingo v. New England Fish Co.*, 727 F.2d 1429, 1441 (9th Cir.), *modified,* 742 F.2d 520 (9th Cir. 1984) (reversing restrictions on plaintiffs' communications with class members because the record did not contain specific findings that would justify the restriction, as required by *Gulf Oil*).

**B.**    **Corrective notice based solely on attorney-client communications is dangerous, unwarranted, and unprecedented, and therefore should be denied**

**(1)**    ***The communication at issue was not a solicitation, but legal advice to clients who had engaged counsel weeks, months, or in one case years before — to advise and represent them concerning the specific claims at issue***

In our opposition to class counsel's *ex parte* application seeking a "corrective notice," we informed this Court, under oath, that we immediately ceased all marketing communications with the class when this Court provisionally certified the class. (Opposition to Ex Parte for Corrective Notice, ECF No. 59, 3:10-11). We also informed this Court that each of the 52 recipients of the letter had engaged us as their attorneys before the letter was sent. (*Id.* at 3:12-15).

According to the settlement website at *storemanagersettlement.com*, Simpluris mailed the *Caves* class notice on September 11, 2020. Simpluris mailed the communication at issue at our request, after verifying with us that it was going only to our already-signed clients, on or about October 19, 2020. (ECF 59 3:12-15; ECF 59-1 at 3:19-22).

**MOTION FOR RECONSIDERATION OF ORDER FOR CORRECTIVE NOTICE**

The 52 recipients to whom the letter was sent first consulted with, and then retained us, on the following dates:

| Client ID | Request for Legal Advice | Engagement Agreement Signed |
|---|---|---|
| 425677631 | August 30, 2018 | September 18, 2018 |
| 764833603 | April 3, 2019 | April 3, 2019 |
| 830113803 | April 5, 2019 | April 5, 2019 |
| 280782444 | April 6, 2019 | April 6, 2019 |
| 510845355 | April 6, 2019 | April 6, 2019 |
| 571154876 | April 7, 2019 | April 7, 2019 |
| 187197377 | April 7, 2019 | April 7, 2019 |
| 623944875 | April 11, 2019 | April 11, 2019 |
| 180809114 | April 11, 2019 | April 11, 2019 |
| 961400868 | April 14, 2019 | April 14, 2019 |
| 229221241 | April 21, 2019 | April 21, 2019 |
| 529241487 | April 29, 2019 | May 1, 2019 |
| 346047857 | April 17, 2019 | May 13, 2019 |
| 59075962 | June 4, 2019 | June 4, 2019 |
| 346711132 | June 7, 2019 | June 7, 2019 |
| 749342 | August 19, 2019 | August 19, 2019 |
| 869889211 | September 24, 2019 | September 24, 2019 |
| 235249584 | September 25, 2019 | September 25, 2019 |
| 923456299 | December 31, 2019 | December 31, 2019 |
| 295979858 | January 10, 2020 | January 20, 2020 |
| 195279895 | February 11, 2020 | February 17, 2020 |
| 481288247 | April 19, 2020 | April 19, 2020 |
| 729186767 | July 29, 2020 | July 29, 2020 |
| 417555915 | August 1, 2020 | August 1, 2020 |
| 603812493 | August 1, 2020 | August 1, 2020 |
| 984819840 | April 12, 2019 | August 1, 2020 |
| 550806416 | August 1, 2020 | August 3, 2020 |
| 241806515 | August 3, 2020 | August 3, 2020 |
| 962460983 | August 1, 2020 | August 3, 2020 |
| 959150607 | August 3, 2020 | August 3, 2020 |
| John Tran | August 3, 2020 | August 3, 2020 [2] |

[2] This entry is for Mr. John Tran, who disclosed his attorney-client communication at issue, giving rise to the *ex parte* application at issue, and whom Class Counsel incorrectly speculated in their *ex parte* application might really not have been our client. ECF 59-1 at 3:19-4:20. Mr. Tran at last terminated his attorney-client relationship with us, through Class Counsel, on January 27,

**MOTION FOR RECONSIDERATION OF ORDER FOR CORRECTIVE NOTICE**

| Client ID | Request for Legal Advice | Engagement Agreement Signed |
|---|---|---|
| 421044058 | August 5, 2020 | August 5, 2020 |
| 787356621 | August 9, 2020 | August 9, 2020 |
| 960120485 | August 10, 2020 | August 10, 2020 |
| 85331596 | August 10, 2020 | August 10, 2020 |
| 508881787 | August 2, 2020 | August 11, 2020 |
| 70447783 | August 12, 2020 | August 12, 2020 |
| 98178844 | August 13, 2020 | August 13, 2020 |
| 320177813 | August 11, 2020 | August 13, 2020 |
| 151752958 | August 13, 2020 | August 13, 2020 |
| 251234862 | August 13, 2020 | August 14, 2020 |
| 364303577 | August 7, 2020 | August 14, 2020 |
| 997765680 | August 15, 2020 | August 15, 2020 |
| 292193371 | August 13, 2020 | August 15, 2020 |
| 641407727 | August 15, 2020 | August 15, 2020 |
| 85093745 | July 30, 2020 | August 22, 2020 |
| 934795156 | August 23, 2020 | August 23, 2020 |
| 507239342 | August 25, 2020 | August 25, 2020 |
| 730826977 | August 18, 2020 | August 26, 2020 |
| 638961627 | August 27, 2020 | August 27, 2020 |
| 110215281 | September 4, 2020 | September 4, 2020 |
| 592978616 | September 12, 2020 | September 12, 2020 |

In sum, most of these clients began their attorney-client relationship with us months or years before the notice period. All of them engaged us at least five weeks before the letter at issue. Only one hired us after the notice period began — he engaged us just one day after the notice was mailed, so it is improbable that he had even received the notice when he engaged us. Even that one client, the most recently signed client of the 52 clients at issue, engaged us more than five weeks before the letter at issue was mailed.

**(2)**    ***The evidence of the attorney-client relationship here is unrebutted, and 51 of the 52 letters at issue remain privileged and confidential, and thus not appropriate for either the ex parte application that was made or any corrective notice***

We will, if necessary and requested by the Court, submit detailed documentary evidence of the dates of our client consultations and engagements for *in camera* review, without waiving

---

2021. Our other clients, however, have not waived the attorney-client privilege. We have sought to honor that privilege here by not identifying by name those to whom we sent the letter at issue, other than Mr. Tran.

**MOTION FOR RECONSIDERATION OF ORDER FOR CORRECTIVE NOTICE**

the privilege. But the evidence in Ray Gallo's declaration stands un-rebutted in establishing the attorney-client relationships at issue — because it is true — notwithstanding class counsel's careless and groundless remarks on the subject in their *ex parte* briefing suggesting the attorney-client relationships at issue here are less that *bona fide*. See, e.g., *Howard v. Securitas Security Services, USA Inc*., 630 F.Supp.2d 905, 911 (N.D. Ill. 2009) (". . . [T]he parties dispute whether Huebner was a pre-existing client of Stephan Zouras, LLP at the time the letter was sent . . . [but,] absent rebuttal evidence, the court must accept the representations of plaintiffs' counsel that he was.")

Because it is an incontrovertible fact (and the evidence is uncontested) that all recipients of the letter at issue were our signed clients (ECF 59-1 at 3:5-8, 3:19-4:1), class counsel should withdraw their inappropriate suggestions that we were soliciting clients. The purported confusion of one client, Mr. Tran, aside, no one should be using our privileged communication with 52 of our individual clients as a purported basis to justify sending a "corrective notice" to the 51 clients who unquestionably did *not* waive the attorney-client privilege and have not indicated they were in any way "confused" about their rights under the settlement or their attorney-client relationship with us. See ECF 59-1 at 5:17-21.

**(3)    *The right to opt out under Rule 23 includes the right to independent legal advice concerning whether to exercise it***

The right to be excluded from the class is a fundamental right of every class member, furthering a fundamental policy underlying Rule 23.[3] The average class member here and in most cases, without legal advice, will not know whether individual litigation is most likely to get them

---

[3] The United States Supreme Court has declared that class members have a due process right to opt out of a class action settlement involving claims for monetary damages. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). "'The right to opt out of a class action is one that must be exercised individually,' because 'individual class members . . . have the right to intelligently and individually choose whether to continue in a suit as class members.'" *In re Centurylink Sales Practices and Securities Litigation*, Slip Copy, 2020 WL 3512807, *2 (D. Minn. June 29, 2020) (*quoting In re Nat'l Football League Players' Concussion Injury Litig*., No. 2:12-md-02323-AB, 2019 WL 95917, at *5 (E.D. Pa. Jan. 3, 2019). *See also Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1024 (9th Cir. 1998), *overruled on other grounds* by *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) (confirming that class members have due process rights to "intelligently and individually choose whether to continue in a suit as class members" and that such a decision cannot be made by class counsel or class representatives).

**MOTION FOR RECONSIDERATION OF ORDER FOR CORRECTIVE NOTICE**

a sufficiently better result to be worth the risk, expense, and effort.[4] A neutral class notice necessarily cannot and does not tell class members whether it is in their interests to opt out, which they are entitled to engage a lawyer to tell them — as the class notice confirmed to the class members here.[5]

We are responsible for advising our clients, the recipients of the communication at issue, and for determining (and answering to our clients for) the form and content of our advice. We sent them the letter at issue because the individual facts of their cases that they shared with us, and our broader investigation and knowledge of the relevant law, compelled our conclusion that it is the best legal advice we can offer. We chose the form and content, in our judgment, to protect their interests.

The proposed "corrective notice" frustrates our clients' due process and first amendment rights to obtain and rely on our advice to intelligently and individually decide whether to opt out. For example, our clients know that we are financially interested because they signed contingent

---

[4] "Only in cases where the class member's claim is valuable enough to justify individual litigation would a class member even consider opting out of a class action. In these economically viable cases, class actions are not necessarily the most efficient procedural tool and the class member may recover more pursuing an individual claim, even without the economies of scale. Class members are economic actors and should not be punished for wanting to maximize their benefit." Antonio Gidi, *Loneliness in the Crowd: Why Nobody Wants Opt-out Class Members to Assert Offensive Issue Preclusion against Class Defendants*, 66 SMU L. Rev. 1, 18-10 (2013). See also Sergio Campos, *Mass Torts and Due Process*, 65 Vand. L. Rev. 1059, 1082-85 (2012) ("[O]pt-out rights allow plaintiffs to hold out for a greater share of recovery, in effect holding complete aggregation hostage for a payoff."); David Betson & Jay Tidmarsh, *Optimal Class Size, Opt-Out Rights, and "Indivisible Remedies,"* 79 Geo. Wash. L. Rev. 542, 544 n. 9 (2011) ("Parties who opt out can sometimes extract larger payments than they could have from remaining in the class action.") (Citations omitted.)

[5] "Opt-out rights matter. If they did not, they would not be such a recurrent focus of litigation. Nor would class counsel—and, in the settlement context, defendants—go to such elaborate lengths to avoid the prospect of opt outs. In general, class counsel are likely to disfavor the availability of optout rights. One obvious basis for this preference stems from the fact that attorneys' fees are generally calculated as a proportion of the aggregate class recovery, and allowing class members to opt out tends to diminish the aggregate value of the class's claims. Opt-out rights also tend to limit the ability of class counsel to spread the costs of litigation across the broadest possible pool of litigants, thereby allowing for optimal economies of scale. Where the class action involves high-value individual damages claims, opt-out rights may diminish the negotiating leverage of class counsel by limiting their ability to extract a "peace premium" from defendants who wish to secure a complete release from all future litigation." Ryan C. Williams, *Due Process, Class Action Opt Outs, and the Right Not to Sue*, 115 Columbia L. Rev. 599, 611 (2015).

---

**MOTION FOR RECONSIDERATION OF ORDER FOR CORRECTIVE NOTICE**

fee agreements with us.[6] Telling them to keep in mind that our advice is financially interested (as Class Counsel's proposed corrective notice would do) suggests that this Court disagrees with our advice and/or suspects our motives, and thus encourages our clients *not* to opt out. In our view, in this instance, not opting out is very likely contrary to their legal and financial interests. *See also* n. 5 and 6, *supra*.[7] Similarly, telling them this Court found our letter "misleading" and decided that our letter warrants "corrective notice" tells our clients that this Court thinks we're untrustworthy, discourages them from exercising their opt-out rights and, potentially, discourages them from continuing their attorney-client relationships with us.

Our duty was and is to zealously represent our clients.[8] We sent the letter to 52 of them to protect their interests, as we are required to do, and to give them independent, candid, attorney-client privileged advice based on the facts of their individual cases, which they had provided to us, and on our legal analysis. Having the Court remind them that our advice is only our opinion (as class counsel's draft notice would do) is a stunning intrusion into the attorney-client relationship seeking to undermine it. It is also misleading given the evidence upon which we based our advice and opinions, which this Court has not yet heard.

---

[6] Again, while this Court should not require it as our evidence of the formation of the at-issue attorney-client relationships is uncontradicted in the record, we can produce executed fee agreements, and other validating data, for *in camera* review. We will do so upon the Court's request, provided that we are not waiving the attorney-client privilege.

[7] Putting aside our well-grounded conclusion, after analyzing our clients' individual facts and damages, that this is a case where many of our clients should opt out because the value they are receiving as settlement class members is far too low compared to the value of their sizable, provable individual claims, in this instance there also are additional issues that justified our direct and privileged advice. *See* Vasquez objection (Dkt. 52). *See also* Susan P. Koniak & George M. Cohen, *Under Cloak of Settlement*, 82 Va. L. Rev. 1051, 1113-1114 (1996) (discussing "reverse auctions" where defendants can offer "the right to bargain on behalf of the class to lawyers willing to accept the lowest payment for class members" and, where multiple actions are filed, "can easily shop around for the most desirable plaintiffs' lawyers.")

[8] *See, e.g.*, George Rutherglen, *Better Late Than Never: Notice and Opt Out at the Class Settlement Stage of Class Actions*, 71 NYU L.Rev.258, 281 (1996) (noting that attorneys for individual class members are "ethically obligated to act in the interests of their clients," that "an ordinary class member may not understand" a class notice "without the assistance of counsel," and that a "fully informed decision, however it is achieved, might well lead the client not to exercise the right to opt out.").

**MOTION FOR RECONSIDERATION OF ORDER FOR CORRECTIVE NOTICE**

**(4)    *Corrective notice based on attorney-client communications is unprecedented***

Having surveyed the cases, we find none (i) where a court has limited attorneys' right to advise their own individual clients concerning whether to opt out of a proposed class action, (ii) where a court has limited class members' rights to receive advice from their personal lawyers, or (iii) where the court has seen fit to provide counterpoint to that advice. How are class members to intelligently exercise their Rule 23 right to request exclusion if they are denied the advice of the lawyers they personally engaged to advise them concerning the dispute at issue? How can the court determine what is a proper "corrective notice" without knowing what we know about the facts of these individuals' cases? A neutral class notice does not tell them what to do. They need and are entitled to that advice from their lawyers. Without it, a fundamental policy behind Rule 23 — that putative class members have the right to opt out — is frustrated.

For these reasons, the Court should reverse its original ruling and refrain from "correcting" or commenting on the legal advice that Gallo and Wynne gave their clients. Any other decision is an unprecedented, unwarranted, and dangerous intrusion into the attorney-client relationship that frustrates a fundamental purposes underlying Rule 23.

**C.    Unless the Court reverses its order for corrective notice, or writes a detailed order, ECF 66 is clear and reversible error under *Gulf Oil***

In *Gulf Oil*, a class action was filed a month after Gulf entered into a conciliation agreement with the Equal Employment Opportunity Commission. Gulf had sent notices to 643 employees informing them that they were entitled to back pay under the conciliation agreement, and the specific amount that they would receive if they signed the release form within 30 days. Counsel for the named plaintiff in the class action met with 75 potential class members who had received the notice, encouraging them not to sign the release forms that Gulf had sent them. Defendant Gulf moved for an order limiting Plaintiffs' counsel's communications with purported class members. *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 91-93 (1981).

The trial court initially issued an order prohibiting all communications between the parties and purported class members. The order did not include specific findings that justified the

**MOTION FOR RECONSIDERATION OF ORDER FOR CORRECTIVE NOTICE**

1    restriction. Gulf asked the court to modify the order to allow Gulf to continue communicating

2    with class members. The court heard oral arguments but did not admit evidence into the record.

3    　　　　Without any factual findings, and without explaining its legal reasoning, the trial court

4    modified the initial order to prohibit all communications between the parties and purported class

5    members without prior court approval, with some exceptions, including attorney-client

6    communications initiated by the client, communications in the ordinary course of business (Gulf

7    could speak with its employees concerning its business), and communications where a party

8    believed it had a constitutional right to communicate with putative class members — as long as

9    they disclosed those communications to the Court for review within five days. *Gulf Oil Co.*, 452

10   U.S. at 94-95.

11   　　　　The U.S. Supreme Court held that Rule 23 limits trial courts' discretion, and any order

12   limiting or interfering with a party's rights in a class action must further the policies behind Rule

13   23. *Gulf Oil Co.*, 452 U.S. at 99. It further held that before limiting a party's rights, the trial court

14   must carefully weigh the competing interests at stake and carefully draw an order that limits the

15   party's rights as little as possible. A clear record is required to enable appellate review. *Gulf Oil

16   Co.*, 452 U.S. at 101(quotations omitted).

17   　　　　Courts consistently have applied *Gulf Oil's* requirement of specific findings (and limited

18   action) to all stages of litigation, and specifically to corrective notices, including those concerning

19   communications by lawyers seeking to represent opt-outs. See, *e.g.*, *Kutzman v. Derrel's Mini

20   Storage, Inc.*, 354 F. Supp. 3d 1149, 1159 (E.D. Cal. 2018) (collecting cases); *Domingo v. New

21   England Fish Co.*, 727 F.2d 1429, 1441 (9th Cir.), *modified,* 742 F.2d 520 (9th Cir. 1984)

22   (reversing restrictions on plaintiffs' communications with class members because the record did

23   not contain specific findings that would justify the restriction, as required by *Gulf Oil*).

24   　　　　The *Gulf* trial court's order created significant problems for the plaintiffs because it

25   "interfered with their efforts to inform potential class members of the existence of this lawsuit and

26   may have been particularly injurious" because the employees at the time were being pressed to

27   decide whether to accept Gulf's settlement offer. *Gulf Oil Co.*, 452 U.S. at 102.

28

14

**MOTION FOR RECONSIDERATION OF ORDER FOR CORRECTIVE NOTICE**

Here, the *Caves* class members, at the time of the communication at issue, similarly were pressed to decide whether to opt out of the proposed *Caves* settlement class. The 52 recipients of the communication at issue were therefore in need of the advice of their lawyers, whom they had engaged weeks before to advise and represent them concerning these claims.

**(1)**    ***This Court's Order does not articulate how the Court weighed the need for a corrective notice against the right of represented class members to receive legal advice from their retained counsel of choice, and thus fails to meet the* Gulf Oil *standard***

The Court's order granting Plaintiffs' *Ex Parte* Application for Corrective Notice (ECF 66) provides no findings of fact or legal reasoning for its unprecedented result. We find no decision where a court has concluded that a privileged communication between attorneys and their signed clients, by itself, merited a corrective notice to those clients. Even in *Gulf*, the trial court allowed communications initiated by clients. *Each communication at issue here resulted from a specific request for legal advice, and a formal engagement of counsel, by the recipient, concerning the claims at issue*. ECF 59 at 8:2 to 9:5. Each communication was, in counsel's view, required by counsel's obligation to communicate good advice clearly and effectively, with appropriate emphasis, concerning the subject matter of the engagement. This is not a case involving solicitations of class members as potential individual clients, or solicitations of opt-outs from non-clients. The letter's recipients were our own clients, receiving privileged advice about what we believe is the inadequacy of the settlement, for most putative class members, and about their right to opt out.[9]

---

[9] *Georgine v. Anchem Products, Inc.*, 160 F.R.D. 478 (1995) is distinguishable and does not justify the proposed "corrective" notice here because it involved non-privileged communications. In that asbestos-related class action, numerous law firms opposed to the class settlement sent thousands of letters in a massive campaign to solicit opt-outs through mass mailings and advertisements targeted to class members who were, for the most part, *not* already their clients. *Id*. at 489. The court found that many of the letters contained falsehoods and/or failed to disclose that the authors had financial incentives to oppose the settlement. *Id*. at 490-496. In contrast, we were writing only to our own clients, as their already engaged lawyers. And all of them plainly know that we have financial incentives to represent them individually, having personally signed our fee agreements. In *Georgine*, there were 62,550 letters, and the court found that the communications of counsel opposed to the settlement "likely confused and misled class members, caused a high number of opt-outs, and, therefore, had an adverse effect on the administration of justice." *Id*. at 498.  Of the 200,000-plus opt-outs, more than 95% of them were on forms other than those included in the Court-approved notice packets. *Id*. at 501-02. Here, the sole communication at issue in the Court's order was our privileged communication to our signed

---

15

A clear record that justifies the corrective notice is necessary in this context to ensure that any order for a corrective notice supports more than it hinders the policies behind Rule 23 and is carefully drawn to limit the rights of the parties as little as possible. *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 102 (1981); *Kutzman v. Derrel's Mini Storage, Inc.*, 354 F. Supp. 3d 1149, 1159 (E.D. Cal. 2018).

**3.    Conclusion**

This dispute concerns only two invalidated opt-outs. But ordering "corrective notice" to our 52 clients, "correcting" or commenting on our privileged advice, creates a dangerous precedent for courts interfering with attorney-client communications and undermines class members constitutional (due process) right to opt out of this class action seeking monetary damages. It would be shocking and inappropriate enough for a court to interfere with the rights of class members to receive advice from attorneys they engaged *during* the notice period. The recipients of the letter at issue here had engaged counsel *before* even receiving the class notice, to advise and represent them concerning the claims at issue in this litigation. This Court's Order interferes with that advice and undermines the attorney-client relationship and the right to opt out.

The Court should reconsider its Order Granting Plaintiffs' *Ex Parte* Application for Corrective Notice to the Class and Additional Opt-Out Period and **deny** Plaintiffs' *Ex Parte* Application (ECF No. 56). Nothing more is required.

But if after further review the Court maintains that a corrective notice is warranted for privileged legal advice to clients, then the Court should provide specific findings and reasoning sufficient to justify that dangerous and unprecedented decision, and enable appellate review. The

---

clients, and only two opt-outs were completed on the enclosed opt-out form. Unlike the massive, national campaign soliciting opt-outs in *Georgine* (160 F.R.D. at 500), zero evidence exists that we were doing anything other than giving legal advice to clients who had already retained us to give them such legal advice. They had a right to such advice and we had a right and a duty to give it to them. Notably, the objectors and their counsel who opposed the class settlement in *Georgine* had the last laugh.  On appeal, the Third Circuit ordered the class decertified, finding, *inter alia*, that adequacy of representation was not satisfied due to intra-class conflicts. In discussing adequacy, the Third Circuit noted the objectors' allegations and evidence that class counsel had colluded with Amchem for their own financial interests and acted in a manner "rife with ethical overtones," but reached no conclusion in that regard.  *Georgine v. Amchem Products, Inc.*, 83 F.3d 610, 630 (1996).

**MOTION FOR RECONSIDERATION OF ORDER FOR CORRECTIVE NOTICE**

new order must weigh the need for any corrective notice against our clients' right to receive a privileged communication containing legal advice from their retained attorneys of choice without court action or commentary. The *Gulf Oil* rule requiring detailed reasoning is perhaps most applicable and essential here, where the only communications at issue were attorney-client privileged ones. This Court should also certify the issue for appeal given its potentially profound impact on class action jurisprudence.

Again, Gallo and Wynne are prepared to submit additional evidence of the facts asserted herein, for *in camera* review, if the court deems it necessary or appropriate, subject to maintaining the attorney-client privilege. This includes evidence of engagements, engagement dates, communication dates, and evidence from Simpluris regarding opt-out dates and forms to corroborate the assertions above. It could even include evidence that the 52 individuals who received the letter at issue would, based on the facts of their individual cases, be ill-advised to remain in the class and not opt out of the pending settlement — such that this Court should not suggest otherwise by corrective notice or any other means.

It is our role as counsel to advise, and to answer to our clients for the form and content of that advice. The Court should not provide advice, or blunt our advice by providing counterpoint to it — which is the same thing as the Court providing advice. Accordingly, the Court should, on reconsideration, deny Class Counsel's *ex parte* application for corrective notice. Indeed, no "corrective notice" can properly be sent to our 51 clients who have not waived the attorney-client privilege concerning the communication at issue. The mere word "corrective" seeks to undermine the attorney-client relationship and dissuade our clients from following their lawyers' best advice.

This Court's current order (ECF 66) would set a dangerous precedent undermining the right to opt out and the right of class members to obtain and rely on the advice of lawyers who do not have an interest in promoting a proposed class settlement. It should be vacated and the *ex parte* application denied.

**MOTION FOR RECONSIDERATION OF ORDER FOR CORRECTIVE NOTICE**

1

2      DATED:  February 25, 2021                    **RESPECTFULLY SUBMITTED,**

3                                                   **GALLO LLP**
4                                                   **WYNNE LAW FIRM**

5

6                                         By:   _/s/ *Ray E. Gallo*_
                                                Ray E. Gallo
7                                               Counsel for Objector Barbarito Ruan Vasquez

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MOTION FOR RECONSIDERATION OF ORDER FOR CORRECTIVE NOTICE**